STATE OF NEVADA AND STATE OF NEVADA GAMING COMMISSION, APPELLANTS, v. FRANK ROSENTHAL, RESPONDENT.

No. 9301

February 3, 1977                                    559 P.2d 830

[Rehearing denied March 9, 1977]

*Robert List*, Attorney General, and *A. J. Hicks* and *Marcus H. Sloan, III*, Deputy Attorneys General, for Appellants.

*Oscar B. Goodman*, of Las Vegas, and *Erwin N. Griswold* and *Linda K. Smith*, of Washington, D.C., for Respondent.

Amicus Curiae: *Frank W. Daykin,* Legislative Counsel; *Beckley, Singleton, DeLanoy, Jemison and Reid,* for Scott Corporation; *Vargas, Bartlett and Dixon,* for First National Bank; and *McDonald, Carano, Wilson, Bergin and Bible,* for M.G.M.

## OPINION

By the Court, THOMPSON, J.:

This matter comes to us on direct appeal from a judgment of the Eighth Judicial District Court. That judgment declared certain licensing provisions of the Nevada Gaming Control Act unconstitutional for want of standards. It also found that the hearings before the Gaming Control Board and the Gaming Commission on Frank Rosenthal's application for a gaming license were conducted in such fashion as to violate federal constitutional proscriptions. Finally, the district court nullified the decision of the Gaming Commission that Frank Rosenthal is a person whose licensing would reflect or tend to reflect discredit upon the State of Nevada. For reasons hereafter stated we reverse that judgment in all respects and reinstate the decision of the Gaming Commission.

On January 23 and 24, 1975, the Gaming Commission held an investigative hearing to determine whether Frank Rosenthal was a key employee exercising significant influence over decisions of Argent Corporation, a holding company, which then owned three major hotel-casinos in Clark County. Rosenthal was executive consultant to the Chairman of the Board of Argent Corporation. It is clear that he significantly influenced policy decisions concerning the conduct of gaming in the three hotel-casinos. Consequently, the Commission directed him to submit an application for a gaming license as a key employee. The application submitted by him described his duties "to consult with and to recommend to the Chairman; to advise, to

administrate, delegate and supervise Corporate standards, procedures and policies."

The application first was considered by the Gaming Control Board at a hearing on January 14, 1976. The members of that Board voted unanimously to recommend to the Nevada Gaming Commission denial of the application. '

On January 22, 1976, the Gaming Commission heard the matter and voted unanimously to deny the application for license. The Commission found: "The applicant is a person whose licensing by the State would reflect or tend to reflect discredit upon the State of Nevada by reason of: A) A North Carolina court finding of guilt for conspiracy to bribe an amateur athlete; B) Testimony of Mickey Bruce in Senate subcommittee hearings that applicant attempted to bribe him to throw outcome of 1960 Oregon-Michigan football game; C) Statements by police officers Dardis and Clode to Senate subcommittee and to Florida Racing Commission that applicant admitted he was corrupting public officials in return for protection; D) The applicant's being barred from race tracks and pari-mutuel operations in the State of Florida."

On February 17, 1976, Rosenthal filed a petition for judicial review of the decision of the Commission. He premised his petition upon NRS 463.315, alleging that the decision of the Commission violated constitutional provisions, was in excess of its jurisdiction, made upon unlawful procedures, was unsupported by any evidence, and was arbitrary and capricious and otherwise not in accordance with law. The petition did not assert that the licensing provisions of the Gaming Control Act were unconstitutional for want of standards. The district court, sua sponte, declared NRS 463.140 and 463.220 unconstitutional, and nullified the decision of the Gaming Commission.

1. It is established beyond question that gaming is a matter of privilege conferred by the State rather than a matter of right. The legislature has so declared. "Any license issued pursuant to this chapter shall be deemed to be a revocable privilege and no holder thereof shall be deemed to have acquired any vested rights therein or thereunder." NRS 463.130(2). In 1931 this court wrote: "We think the distinction drawn between a business of the latter character (liquor) and useful trades, occupations, or businesses, is substantial and necessary for the proper exercise of the police power of the state. Gaming as a calling or business is in the same class as the selling of intoxicating liquors in respect to deleterious tendency. The state may regulate or

suppress it without interfering with any of those inherent rights of citizenship which it is the object of government to protect and secure." State Ex Rel. Grimes v. Board, 53 Nev. 364, 372, 373, 1 P.2d 570 (1931). Accord: Dunn v. Tax Commission, 67 Nev. 173, 187, 216 P.2d 985 (1950).

The licensing and control of gaming requires special knowledge and experience. Nev. Tax Com. v. Hicks, 73 Nev. 115, 119, 310 P.2d 852 (1957); Dunn v. Tax Commission, supra. In Hicks, this court observed "the risks to which the public is subjected by the legalizing of this otherwise unlawful activity are met solely by the manner in which licensing and control are carried out. The administrative responsibility is great." Id. at 120.

The legislature has been sensitive to these basic concepts. Members of the Gaming Control Board and Gaming Commission must have special qualifications suited to the important duties with which they are charged. NRS 463.023; 463.040. Their powers are comprehensive. NRS 463.130–144. Court intrusion is limited. As we noted in Gaming Control Bd. v. Dist. Ct., 82 Nev. 38, 409 P.2d 974 (1966): "Any effort to obstruct the orderly administrative process provided by the Gaming Control Act casts serious doubt upon the ability of Nevada to control the privileged enterprise of gaming. Control does not exist if regulatory procedures are not allowed to operate. Courts owe fidelity to the legislative purpose. . . ." Id. at 40. Indeed, judicial review is confined to a final decision or order of the Commission and then only in specified instances.

With these basic principles in mind we turn to consider the issues of this appeal.

2.   In the district court the State and the Gaming Commission moved to dismiss the petition for review for want of jurisdiction. We particularly note that the petition did not challenge the constitutionality of the licensing statutes. Had such challenge been made, a court would have to resolve it. Jurisdiction to decide that issue would exist since the courts are charged with the duty to decide such a question.

The petition for review was presented pursuant to NRS 463.-315. That statute provides that "Any person aggrieved by a

final decision or order of the commission made after hearing or rehearing by the commission pursuant to NRS 463.312 . . . may obtain a judicial review thereof in the district court. . . ." An examination of NRS 463.312 reveals its application only to disciplinary or other action against a licensee. It does not contemplate court review of the denial of a gaming license application. The sole responsibility for licensing is vested exclusively in the commission. NRS 463.220(6) so provides. "The Commission shall have full and absolute power and authority to deny any application (for a license) for any cause deemed reasonable by such Commission. . . ." In Nev. Tax Com. v. Hicks, 73 Nev. 115, 121, 310 P.2d 852 (1957), the court wrote: "It is not the province of the courts to decide what shall constitute suitability to engage in gambling in this state." In this regard the law has not changed since Hicks.

The legislature carefully has distinguished between persons who have been licensed and those who never have been licensed. In the former case judicial review of disciplinary action is provided; in the latter instance, it is not. This is a reasonable distinction since licensees possess property interests which those who have never been licensed do not have. The district court should have granted the motion to dismiss filed by the State and the Commission. Instead, that court declared the licensing provisions of the Gaming Control Act unconstitutional for want of standards, notwithstanding the absence of an allegation in the petition placing that question in issue. We proceed, therefore, to resolve that question.

3.    The sections declared unconstitutional are NRS 463.140 and 463.220. In discussing this issue we do not decide whether licensing standards for the privileged enterprise of gaming must be expressed legislatively.[1] However, the legislature has expressed standards which have been implemented administratively. When one considers the interrelationship of the statutory standards, United States v. Polizzi, 500 F.2d 856 (9th Cir. 1974), and the regulations adopted administratively, any contention that there is an absence of appropriate standards must fail.

The basic standard is stated in NRS 463.130. Gaming shall

[1]State ex rel. Grimes v. Board, 53 Nev. 364, 1 P.2d 570 (1931), may be read to mean that uniform rules and standards are not essential to state control of gaming since it is a privileged enterprise subject to total state regulation and suppression.

be licensed and controlled "so as to protect the public health, safety, morals, good order and general welfare of the inhabitants of the State of Nevada, and to preserve the competitive economy and the policies of free competition of the State of Nevada." The statutes which were ruled unconstitutional by the court below simply state that gaming licenses shall be administered "for the protection of the public and in the public interest in accordance with the policy of this state," NRS 463.-140, and that the Gaming Commission has full power to deny any application "for any cause deemed reasonable," NRS 463.-220.

Administrative regulations have been adopted by the Commission pursuant to legislative authorization. NRS 463.150(1). Relevant to this case is Regulation 3.090. There, it is stated: "1. No license, registration, finding of suitability, or approval shall be granted unless and until the applicant has satisfied the Commission that the applicant: a) Is a person of good character, honesty, and integrity; b) Is a person whose background, reputation and associations will not result in adverse publicity for the State of Nevada and its gaming industry; and c) Has adequate business competence and experience for the role or position for which application is made." If we were to assume that the standards announced in NRS 463.140 and 463.220 are inadequate legislative expressions for the control of licensing in a privileged industry, the implementing regulation would serve to cure the defect since the "gaps" may be filled in administratively. Dunn v. Tax Commission, 67 Nev. 173, 216 P.2d 985 (1950).

Persons of ordinary intelligence surely can understand the intent and purpose of the standards expressed in the quoted regulation.

We wish, however, explicitly to state that the statutory standards alone are sufficient since "reasonable" action by the Commission is required in the light of the public interest involved. It is entirely appropriate to lodge such wide discretion in the controlling administrative agency when a privileged enterprise is the subject of the legislative scheme. State ex rel. Grimes v. Board, 53 Nev. 364, 1 P.2d 570 (1931); Gragson v. Toco, 90 Nev. 131, 520 P.2d 616 (1974). We, therefore, find no basis for the ruling below that NRS 463.140 and NRS 463.220 are unconstitutional.

4. The district court also found that the applicant was

denied procedural due process at the hearings before the Board and Commission. For reasons already stated, the court lacked jurisdiction to so rule. Notwithstanding this fact, the record refutes the court finding. The applicant and his two attorneys were present at each hearing. The applicant testified at each hearing and was given the opportunity to explain certain past alleged criminal activities and argue his position. Seventeen witnesses testified on his behalf, and seven letters attesting his good character and reputation were read into the record.

The district court, by ruling Rosenthal's due process had been violated because he had not been notified of the charges against him, misconceived the purpose of the hearings. They were not criminal proceedings in which Rosenthal had charges against him, but merely administrative proceedings wherein Rosenthal had the burden of proving his qualifications to receive a license. NRS 463.170. Further, the court mistakenly held that Rosenthal was denied his right to cross-examine apparently because the Board and Commission considered certain "hearsay" evidence consisting of the McClellan subcommittee transcript which was taken under oath, judicial papers from North Carolina, and investigative reports by the North Carolina State Bureau of Investigation. However, these hearings need not technically comport with strict rules of evidence, and hearsay can be accepted and considered by the agencies. NRS 463.312(13)(f); Citizens Bk. of Nev. v. Robison, 74 Nev. 91, 323 P.2d 705 (1958).

The district court ruling was premised upon the federal constitution. Although due process was not denied the applicant, it is worthwhile briefly to consider whether federal constitutional proscriptions are involved at all.

As before noted, gaming is a privilege conferred by the state and does not carry with it the rights inherent in useful trades and occupations. State ex rel. Grimes v. Board, 53 Nev. 364, 1 P.2d 570 (1931); Dunn v. Tax Commission, 67 Nev. 173, 216 P.2d 985 (1950); NRS 463.130(2).

We view gaming as a matter reserved to the states within the meaning of the Tenth Amendment to the United States Constitution.[2] Within this context we find no room for federally protected constitutional rights. This distinctively state problem is

_____

[2]U.S. Const. amend. X: "The powers not delegated to the United

to be governed, controlled and regulated by the state legislature and, to the extent the legislature decrees, by the Nevada Constitution. It is apparent that if we were to recognize federal protections of this wholly privileged state enterprise, necessary state control would be substantially diminished and federal intrusion invited.

In this opinion we heretofore have noted the distinction drawn by the legislature between persons who have been licensed and those who never have been licensed. Judicial review is provided for disciplinary action against licensees. It is not provided for one who has not been licensed.

With regard to licensees the legislature, in vague fashion, has recognized that a decision of the gaming commission may violate "constitutional provisions." NRS 463.315(11)(a). We use the term "vague" advisedly. The "constitutional provisions" which the legislature had in mind are not designated. This, along with the mandate of NRS 463.130(2) that any license is a revocable privilege without vested rights, makes it difficult to fathom legislative intent.

Our obligation is to construe the mentioned statutory provisions in such manner as to render them compatible with each other. Bodine v. Stinson, 85 Nev. 657, 461 P.2d 868 (1969). With this principle in mind we interpret NRS 463.315(11)(a) to refer only to the concept of procedural due process which is embraced within Nev. Const. art. 1, § 8, no person shall "be deprived of life, liberty, or property without due process of law." Thus construed, the two statutes are compatible. The license which is declared to be a revocable privilege, may not be revoked without procedural due process first being afforded the licensee.

5. As a gaming employee, Frank Rosenthal was required to hold a valid work permit. NRS 463.335(3). The denial of his application for a gaming license as a key employee may have caused an automatic revocation of his work permit if NRS 463.595 and Regulation 5.011(6) are to be literally applied,[3]

States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

[3]NRS 463.595 "1. Each officer, employee, director, partner, principal, trustee or direct or beneficial owner of any interest in any holding company or intermediary company, who the commission determines is, or is to become, engaged in the administration or supervision of, or any other involvement with, the gaming activities of a corporate licensee, must be found suitable therefor and may be required to be licensed by the commission, prior to such engagement.

"If any officer, employee, director, partner, principal, trustee or

thus precluding his right to work in a gaming establishment in any capacity. Revocation of a work permit is subject to judicial review, NRS 463.337(4), although the denial of his application to be licensed is not for reasons already stated.

The hearings before the Board and Commission were focused entirely upon the suitability of Rosenthal to be licensed as a key employee since he did significantly influence policy. His right to work in a capacity other than that of a key employee was not in issue at all. His suitability to work as a gaming employee has never been questioned by the gaming authorities of this state. To this extent, O'Callaghan v. District Court, 89 Nev. 33, 505 P.2d 1215 (1973), is in point. There, an employee's right to work as a gaming employee was revoked without prior notice and an opportunity to be heard. We ruled such action improper.[4] It follows that an automatic revocation of an employee's work permit also must fail for want of fairness.

We, therefore, find Regulation 5.011(6) to be inconsistent with the statutes providing for administrative and judicial review of the revocation of a work permit. The regulation cannot stand. Cashman v. Nevada Gaming Comm'n, 91 Nev. 424, 538 P.2d 158 (1975).

A portion of NRS 463.595 likewise may be read to require

---

direct or beneficial owner required to be found suitable pursuant to subsection 1 fails to apply for a gaming license within 30 days after being requested so to do by the commission, or is not found suitable by the commission, or his suitability or license is rescinded after such finding by the commission, the holding company or intermediary company, or both, shall immediately remove such officer, employee, director, partner, principal, trustee or owner from any position wherein he is engaged in the administration or supervision of, or any other involvement with, the gaming activities of a corporate licensee. If the commission suspends the suitability or license of any such officer, employee, director, partner, principal, trustee or owner, the holding company or intermediary company, or both, shall, immediately and for the duration of such suspension, suspend such person from performing any duties wherein he is engaged in administration or supervision of the gaming activities of the corporate licensee and from any other involvement therewith."

Regulation 5.011(6): "Employing in any capacity in or about any licensed establishment (including hotel, restaurant or bar facilities, as well as the gaming casino) any person who has been denied a state gaming license on the grounds of unsuitability or who has refused to submit an application for licensing as a key employee when so requested by the commission, or whose past activities and reputation would tend to bring discredit on the industry or the State of Nevada."

[4]Since the O'Callaghan decision NRS 463.335 was amended to provide for judicial review. See: 1975 Stats., p. 686.

automatic revocation of a work permit held by one found unsuitable to be licensed by reason of the oft repeated phrase in the statute "or any other involvement with the gaming activities of a corporate licensee." An employee with a work permit is involved with the gaming activities of a corporate licensee. This portion of the statute does not square with the statutes providing for administrative and judicial review of the revocation of a work permit and cannot stand.

A reasonable distinction exists between the status of one who seeks to acquire a license, and the status of one who possesses a work permit as a gaming employee. The former does not have existing privileges, but is attempting to acquire them. The latter does have an existing privilege, and is entitled to receive notice and a hearing before his privilege to work as a gaming employee can be nullified.

Therefore, we conclude that Frank Rosenthal may continue to enjoy a work permit as a gaming employee. Our conclusion, however, shall not be construed to preclude further action by the gaming authorities to revoke his work permit should they deem such action advisable.

The judgment of the district court is reversed, and the decision of the Nevada Gaming Commission is reinstated. We particularly point to the fact that this opinion rests solely upon the State Gaming Control Act and Nevada case precedent. As we view this case, a federal question is not present.

BATJER, C. J., and ZENOFF, MOWBRAY, and GUNDERSON, JJ., concur.