In re PROCEEDINGS BEFORE the
FEDERAL GRAND JURY FOR the
DISTRICT OF NEVADA.

Civ. No. LV 80–82 RDF.

United States District Court,
D. Nevada.

March 31, 1980.

B. Mahlon Brown III, U. S. Atty., Las Vegas, Nev., for plaintiff.

## MEMORANDUM OPINION

ROGER D. FOLEY, Chief Judge.

Mr. Geoffrey Anderson, Special Attorney for the Las Vegas Strike Force, United States Department of Justice, has filed an ex parte motion for an order permitting disclosure of certain testimony taken before a Federal Grand Jury. The disclosure sought would be made to the Nevada gaming authorities, specifically the Nevada Gaming Control Board (Board) and the Nevada Gaming Commission (Commission). The testimony in question was given before the Special Grand Jury impaneled December 15, 1977, by this Court. The disclosure would encompass only a portion of the testimony of a single witness, which concerns certain dealings between himself and another individual whose application for a gaming license is currently before the Nevada gaming authorities.[1] The motion brought before this Court was made pursuant to a request from the Gaming Division

---

1. In furtherance of the policy of Grand Jury confidentiality, the identity of the witness and the subject of the testimony will not be revealed. If it is necessary to refer to the individuals involved, the designations "witness" and "applicant" will be used.

of the Nevada Attorney General's office for information the United States Government may have or know about which might reflect upon the applicant's suitability for licensing.

The general question raised by the motion is whether, and under what circumstances, disclosure of Federal Grand Jury evidence is ever available to state administrative authorities. Then, more specifically, this Court must decide whether the situation presently before the Court meets the criteria for such disclosure. Despite the obvious desirability of inter-governmental cooperation in efforts to protect the public, this Court is convinced that the Government has failed to show that reasons for disclosure exist that are sufficient to outweigh the traditional policy of Grand Jury secrecy. For this reason, as explained more fully below, the motion must be denied.

### A. The Policy of Grand Jury Secrecy

The function of the Grand Jury within the federal criminal justice system has been enunciated by the United States Supreme Court as follows:

> "Historically, this body has been regarded as a primary security to the innocent against hasty, malicious and oppressive persecution; it serves the invaluable function in our society of standing between the accuser and the accused, whether the latter be an individual, minority group, or other, to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will."

*Wood v. Georgia*, 370 U.S. 375, 390, 82 S.Ct. 1364, 1373, 8 L.Ed.2d 569, 580 (1962) (footnote omitted). One of the characteristics contributing to the ability of the Grand Jury to carry out this important function is the long-established policy in favor of secrecy of Grand Jury proceedings. The following summary of reasons behind this policy has been adopted by the Supreme Court:

> "(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect [the] innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt."

*United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 n. 6, 78 S.Ct. 983, 986 n. 6, 2 L.Ed.2d 1077, 1081 n. 6 (1958).

The notion of Grand Jury secrecy has received considerable criticism, particularly as applied in those situations in which the Grand Jury has completed its investigation. *See generally* C. Wright, *Federal Practice and Procedure* : Criminal § 106. The clear modern rule is to permit disclosure whenever the interests served by disclosure outweigh the reasons for secrecy that are applicable at the time disclosure is sought. Nevertheless, the Supreme Court has indicated that disclosure is never a matter of course:

> "The grand jury as a public institution serving the community might suffer if those testifying today knew that the secrecy of their testimony would be lifted tomorrow. This 'indispensable secrecy of grand jury proceedings,' *United States v. Johnson*, [319 U.S. 503, 513, 63 S.Ct. 1233, 1238, 87 L.Ed. 1546 (1943)], must not be broken except where there is a compelling necessity. There are instances when that need will outweigh the countervailing policy. But they must be shown with particularity."

*United States v. Procter & Gamble Co.*, supra, 356 U.S. at 682, 78 S.Ct. at 986, 2 L.Ed.2d at 1082.

 Rule 6(e)(2) of the Federal Rules of Criminal Procedure reiterates the general policy of secrecy with respect to Grand Jury proceedings. At the same time, however,

Rule 6(e) also recognizes certain exceptions, including disclosure to government attorneys (meaning attorneys for the United States) for use in the performance of their duties, FRCrP 6(e)(3)(A), and the exception relied on by the Government here:

"Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made when so directed by a court preliminarily [sic] to or in connection with a judicial proceeding . . ."

FRCrP 6(e)(3)(C)(i). Citing the Supreme Court's decision in *Procter & Gamble*, supra, the Judiciary Committee of the Senate recommended the most recent amendment of Rule 6(e)'s disclosure provisions with the following explanation:

"The Rule as redrafted is designed to accommodate the belief on the one hand that Federal prosecutors should be able, without the time-consuming requirement of prior judicial interposition, to make such disclosures of grand jury information to other government personnel as they deem necessary to facilitate the performance of their duties relating to criminal law enforcement. On the other hand, the Rule seeks to allay the concerns of those who fear that such prosecutorial power will lead to misuse of the grand jury to enforce non-criminal Federal laws by (1) providing a clear prohibition, subject to the penalty of contempt and (2) requiring that a court order under paragraph (C) be obtained to authorize such a disclosure. There is, however, no intent to preclude the use of grand jury-developed evidence for civil law enforcement purposes. On the contrary, there is no reason why such use is improper, assuming that the grand jury was utilized for

the legitimate purpose of a criminal investigation. Accordingly, the Committee believes and intends that the basis for a court's refusal to issue an order under paragraph (C) to enable the government to disclose grand jury information in a non-criminal proceeding should be no more restrictive than is the case today under prevailing court decisions. It is contemplated that the judicial hearing in connection with an application for a court order by the government under subparagraph (3)(C)(i) should be ex parte so as to preserve, to the maximum extent possible, grand jury secrecy."

Senate Report No. 95–354, 95th Cong. 1st Sess. at 8, *reprinted in* [1977] U.S.Code Cong. & Admin.News, pp. 527, 531–32. Thus, contrary to the Government's assertion here, the amendments of Rule 6(e) did not do away with the requirement that some need be shown before disclosure is made.[2] The vast majority of the cases permitting disclosure have followed that rule. See, e. g., *In re Disclosure of Testimony before the Grand Jury*, 580 F.2d 281 (8th Cir. 1978); *Special February 1971 Grand Jury v. Conlisk*, 490 F.2d 894 (7th Cir. 1973); *In re Grand Jury Proceedings*, 445 F.Supp. 349 (D.R.I.1978); *United States v. Salanitro*, 437 F.Supp. 240 (D.Neb.1977); *In re Petition for Disclosure of Evidence*, 184 F.Supp. 38 (E.D.Va.1960). Even where disclosure has been permitted, courts have been very careful to limit the extent and type of disclosure to minimize the infringement of confidentiality. Particularly illustrative of this point is *United States v. Salanitro*, supra.

**B.** *Disclosure to State and Local Authorities*

While the legislative history might have been read to limit Rule 6(e)(3)(C)(i) to dis-

2. The movent relies on a recent case from the District of Maryland which holds that Rule 6(e)(3)(C)(i) does not require a particularized need as a prerequisite to disclosure to a *federal* administrative agency. *In re December 1974 Term Grand Jury Investigation*, 449 F.Supp. 743 (D.Md.1978). Even ignoring the obvious distinction between federal and state agencies, the rationale of the case is unpersuasive. The Court completely blurred the distinction between disclosure under Rule 6(e)(3)(A) to

Government personnel whose aid is required to prepare the criminal case against a federal defendant and that under Rule 6(e)(3)(C)(i). Moreover, the interpretation flies in the face of the congressional intent expressed in the Senate Report quoted in the text, supra. The term "government attorneys" in Rule 6(e)(3)(A)(i) refers only to United States Government attorneys. See Senate Report, supra, at 6; *In re Grand Jury Proceedings*, 445 F.Supp. 349 (D.R. I.1978).

closure to federal authorities, the rule has been consistently interpreted to permit disclosure to state and local authorities. See generally *United States v. Goldman*, 439 F.Supp. 337, 346–47 (S.D.N.Y.1977). Cf. *In re Grand Jury Proceedings*, 445 F.Supp. 349 (D.R.I.1978) (questioning the permissibility of disclosure to state authorities). Courts have been reluctant, however, to abandon the connection with a "judicial proceeding" required by the terms of the rule. A recent case provides a good example.

In *United States v. Salanitro*, 437 F.Supp. 240 (D.Neb.1977),[3] four state agencies sought disclosure of Grand Jury materials. The district court, sitting en banc, relied on the definition of a "judicial proceeding" enunciated by Judge Learned Hand:

> ". . . the term 'judicial proceeding' includes any proceeding determinable by a court, having for its object the compliance of any person, subject to judicial control, with standards imposed upon his conduct in the public interest, even though such compliance is enforced without the procedure applicable to the punishment of crime."

*Doe v. Rosenberry*, 255 F.2d 118, 120 (2d Cir. 1958). Then the Court examined the purposes of the various disclosures sought by the state agencies. Since prosecution of criminal violations clearly requires a judicial proceeding, the Court agreed to supply information to the City of Omaha that was relevant to the institution of criminal proceedings. See also *In re Petition for Disclosure of Evidence*, 184 F.Supp. 38 (E.D.Va. 1960). Since deliberations of the Council on Discipline of the Nebraska State Bar Association respecting misconduct of attorneys eventually come before the Nebraska Supreme Court for final determination, the Court permitted disclosure to that body. See also *Doe v. Rosenberry*, 255 F.2d 118 (2d Cir. 1958). Similarly, relevant disclosure to the Commission on Judicial Qualifications was permitted with respect to possible removal of judges, which requires a hearing before the state court. The Court also found that impeachment proceedings fall within the scope of the term "judicial proceedings" and thus allowed the Judiciary Committee of the Nebraska Legislature some access to the Grand Jury evidence for possible use in such proceedings against public officials. Cf. *In re Report and Recommendation of June 5, 1972 Grand Jury*, 370 F.Supp. 1219 (D.D.C.1974) (Permitting "Report" of the Grand Jury to be transmitted to the House Judiciary Committee investigating possible grounds for impeachment of former President Richard M. Nixon).

In other cases, courts have enunciated other situations in which disclosure of Federal Grand Jury evidence to state and local authorities may be characterized as "preliminary to or in connection with a judicial proceeding." Proceedings for which judicial review is contemplated have been held to be preliminary to a judicial proceeding. *Special February 1971 Grand Jury v. Conlisk*, 490 F.2d 894 (7th Cir. 1973). In one case, an administrative police disciplinary hearing was deemed to be "quasi-judicial" and thus within the terms of Rule 6(e)(3)(C)(i). *In re Disclosure of Grand Jury Transcripts*, 309 F.Supp. 1050 (S.D. Ohio 1970). Significantly, however, the disclosure in this last case was made only after a showing that the testimony of a witness before the Grand Jury differed materially from testimony given at trial and the witness had claimed the Fifth Amendment privilege against self-incrimination in a prior disciplinary hearing. The Court explicitly noted that this showed a "particularized need" for disclosure. 309 F.Supp. at 1053.

Administrative agencies, however, have not generally obtained disclosure for use in purely administrative proceedings. In *United States v. Salanitro*, supra, for example, the Court denied disclosure to the City

---

**3.** The importance accorded decisions regarding disclosure of Grand Jury evidence is underscored by the fact that the *Salanitro* motions were heard and decided before all judges of the District of Nebraska sitting en banc.

A subsequent order implementing the decision cited was affirmed by the Eighth Circuit. *In re Disclosure of Testimony before the Grand Jury*, 580 F.2d 281 (8th Cir. 1978).

of Omaha with respect to information pertinent only to personnel determinations entrusted to a department head or the City Personnel Board. 437 F.Supp. at 244. See also *In re Petition for Disclosure of Evidence*, 184 F.Supp. 38, 40–41 (E.D.Va.1960) (administrative disciplinary hearings are not judicial proceedings because they are used to reach misbehavior that is not punishable as criminal). Prior to the amendments explicitly liberalizing disclosure to attorneys for the Federal Government, Rule 6(e)(3)(A)(i), federal agencies were denied access to Grand Jury evidence. See, e. g., *In re Grand Jury Proceedings*, 309 F.2d 440, 443–44 (3d Cir. 1962).

Several cases indicate that a court has inherent authority to release Grand Jury evidence whenever "the ends of justice require it." See, e. g., *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 234, 60 S.Ct. 811, 849, 84 L.Ed.2d 1129, 1174 (1940). This is particularly true when the Grand Jury's work has been completed because several of the reasons militating in favor of secrecy no longer exist. The interest in disclosure is particularly compelling where the Grand Jury itself, by references in an indictment, for example, has raised questions of concern to another public body. Again, *United States v. Salanitro*, supra, provides an excellent example. There the indictment named a lawyer as a party with whom the defendants had conspired and also alleged that the conspiracy involved other unnamed state and local officials. See 437 F.Supp. at 245. In the final analysis, however, the disclosure of Grand Jury evidence in the interest of justice is simply another way of stating that the reasons favoring disclosure outweigh the interests protected by the policy of secrecy. Thus, disclosure under such inherent power of the Court requires some particularized showing of need.

## C. *The Disclosure Sought Here*

There are two reasons why the disclosure sought here must be denied. First, Rule 6(e)(3)(C)(i) is not applicable because the disclosure asked for is not preliminary to or in connection with a "judicial proceeding." Second, the Government has made no showing that there is a particularized need for disclosure.

### 1. *Gaming license procedures*

■ By statute the State of Nevada has legalized gambling but has subjected such operations to extensive state control. NRS 463.010 et seq. Recognizing the importance of public confidence in the integrity of the gaming industry, the State requires background investigations of all persons licensed to conduct gambling operations, which includes all substantial owners and "key employees" of gaming establishments. The procedure established by statute has two steps. The Board is vested with the basic investigatory responsibility and authority. NRS 463.140(2); 463.210. The Board makes recommendations to the Commission as to whether an applicant is suitable for licensing; but it is the Commission that has "full and absolute power and authority" to actually grant or deny an application. NRS 463.140(2); 463.220. Moreover, if the Commission is unsatisfied with the recommendations of the Board, it may conduct a hearing or supplemental investigation of its own. The Commission's decision, which must be filed in writing, is final. NRS 463.220(6). While there is provision for judicial review of disciplinary proceedings, such as for revocation of a license, NRS 463.315, the Supreme Court of the State of Nevada has explicitly held that there is no judicial review of the Commission's decision on a license application. *State v. Rosenthal*, 93 Nev. 36, 559 P.2d 830, *appeal dismissed*, 434 U.S. 803, 98 S.Ct. 32, 54 L.Ed.2d 61 (1977).

The licensing investigation is just that—an investigation. It is not an adversary process attempting to prove or disprove any set of facts. The proceedings do not have the indicia of a "judicial proceeding" within the accepted interpretation of Rule 6(e) as set forth by Judge Learned Hand. There is no determination by a court, judicial review being precluded. The Nevada Legislature has explicitly indicated that a gaming license is a privilege to which no person has

a right. NRS 463.130(2). Thus, the gaming authorities are not making a determination of a right. Nor does the licensing procedure attempt to control the applicant's conduct in the public interest. Rather, the investigation simply inquires into the background of an individual who seeks the privilege of occupying an important position within a gambling operation. While the gaming authorities must make a decision based on information which comes before them, decision-making is not a function exclusive to public bodies exercising judicial authority.

In view of the foregoing, this Court believes that the disclosure sought in this case is not preliminary to or in connection with a judicial proceeding.

### 2. *Failure to show particularized need*

■ Even if this Court were persuaded that the proceedings before the Nevada gaming authorities could be termed "judicial," the motion for disclosure of the Grand Jury testimony does not show any need that might outweigh the traditional policy of Grand Jury confidentiality. As discussed previously, this Court rejects the Government argument that no such showing need be made. Furthermore, this Court is unable to conclude that the obvious interest of the Nevada authorities in obtaining all possible evidence bearing on an applicant's suitability for licensing is sufficient, without more, to outweigh the interest of the federal criminal justice system in continued secrecy.

The primary interest of the federal court must always be the effectiveness of the Grand Jury as an institution whose role is the investigation of federal crimes. Thus, the state's general interest in obtaining information must be secondary to the Grand Jury's importance to the federal judiciary. Only upon a particularized showing of need can the federal and state interests be balanced. There has been no such showing here. On the other hand, there still exists a substantial federal interest in maintaining Grand Jury confidentiality, namely, the encouragement of full and forthright testimony of witnesses before the Grand Jury through the guarantee that only in the exceptional case would the testimony be disclosed.

The fact that the applicant has signed a waiver and power of attorney to facilitate the gaming officials' access to documents does not affect that federal interest in protecting Grand Jury witnesses. The waiver does diminish one of the reasons normally existing when disclosure of Grand Jury evidence is sought after the Grand Jury has completed its work. That is the policy to protect from calumny the reputation of those who are investigated but not implicated in criminal activity for which an indictment is returned. It is reasonable that such a person could waive this protection of his reputation. But a subject of Grand Jury testimony cannot eliminate the protection afforded witnesses who testify against him.

Moreover, there is no indication that the same testimony cannot easily be elicited by the gaming authorities themselves. Nevada statute grants them subpoena power. NRS 463.140(5). Nothing precludes the United States from disclosing to the Nevada authorities any information from unprivileged sources, including that which led to calling the witness before the Grand Jury and asking questions as to his relationship with the applicant. Taking a matter before the Grand Jury does not spread the cloak of confidentiality over the information previously held. State officials should at least be required to gather easily obtainable information under their own powers before being allowed to break the seal of Grand Jury secrecy. See *In re Grand Jury Proceedings*, 309 F.2d 440, 444 (3d Cir. 1962).

Finally, this Court is concerned about the potential for abuse that might arise from routine disclosures of Grand Jury testimony to state and local authorities. The federal investigative agencies have some extraordinary investigative tools at their disposal, such as the federal wiretap provisions, 18 U.S.C. § 2510 et seq. Rarely would such power be available to state administrative agencies. Without careful controls, federal law enforcement authorities might be tempted to involve themselves in matters of

purely local concern, take evidence before the Grand Jury and then seek disclosure to the state authorities under Rule 6(e). Even the recent case relied on by the movent for the position that no particularized need be shown to obtain disclosure of Grand Jury testimony recognized that there was potential for abuse and instituted certain controls on disclosure including a requirement that the motion be accompanied by a sworn statement to the effect that the Grand Jury was not a subterfuge for obtaining information for a civil proceeding. See *In re December 1974 Term Grand Jury Investigation*, 449 F.Supp. 743, 751 (D.Md.1978).

While this Court does not question the desirability of intergovernmental cooperation when appropriate, such cooperation should not be achieved at the expense of important policies such as the confidentiality of Grand Jury proceedings. The case law clearly teaches that a particularized showing of need sufficient to outweigh the policy of secrecy must be made before disclosure is permissible. No such showing has been made here and therefore the motion must be denied.