**Decided March 14, 1983**

IN THE DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

APPELLATE DIVISION

MARIANAS GENERAL CORPORATION, )  CIVIL APPEAL NO. 81-9004
)  CIVIL ACTION NO. 80-0032
     Plaintiff-Appellee, )
)
  vs. )
)
GOVERNMENT OF THE NORTHERN )     O P I N I O N
MARIANA ISLANDS, )
)
     Defendant-Appellant.)
_____)

Before:  Peckham and Duenas, District Judges and Moore,
      Designated Judge*

MOORE, Designated Judge:

    Defendant-Appellant Commonwealth of the Northern Mariana
Islands (NMI) appeals the trial court's grant of summary
judgment to plaintiff-appellee Marianas General Corporation (MGC)
The lower court ruled that the NMI must refund a license
application fee paid pursuant to a statute repealed by
referendum after MGC paid the fee.  The court so concluded

---

*Commonwealth Trial Court Judge sitting pursuant to 48 USC
§1694b.

on the basis of various restitutionary and contract principles. The issue[1] is whether that conclusion was correct under Federal Rules of Civil Procedure 56(c). We hold that it was not. We reverse.

The material facts are undisputed. On July 4, 1979, MGC paid to the NMI Treasury a $10,000 application fee hoping to be awarded a gambling license later. Section 21(a) of Public Law 1-14 (The Casino Gambling Act) required remittance of the fee and specified that it was non-refundable.[2]  On September 17, 1979, the NMI Casino Gambling Commission issued a Provisional License for casino gambling to MGC.

---

[1] The NMI also argues that the trial court erred by not fulfilling the NMI's request to take judicial notice of newspaper articles about the impending referendum. The NMI sought judicial notice to establish that the repeal of the statute was reasonably foreseeable. By demonstrating foreseeability, the NMI apparently intended to defeat MGC's asserted equitable grounds for relief. Transcript (Feb. 13, 1981) at 3. Since we reverse on other grounds, we do not reach the judicial notice issue.

[2] Section 21(a) of Public Law 1-14 (The Casino Gambling Act) provided in part:

> Before issuing a gaming license to an applicant for his initial license under this Act, the Commission shall charge and collect from each applicant a non-refundable application fee of TEN THOUSAND DOLLARS ($10,000.00).

The Provisional License stated that its issuance did not allow MGC to operate a gambling enterprise, but merely constituted evidence of the approval of MGC's license application. The Provisional License further informed MGC that prior to November, 1981, MGC would have to complete construction of gambling facilities, deliver a $1,000,000 bond, and deliver evidence of a $1,000,000 deposit and security agreement. The record is silent as to whether MGC took steps to comply with these conditions before the repeal of the Casino Gambling Act by referendum on November 11, 1979. Following the referendum, MGC requested the NMI to refund the application fee. The NMI refused to do so.

MGC initiated this action on August 27, 1981. The parties filed cross-motions for summary judgment. On February 13, 1981, the trial court granted MGC's motion and denied the NMI's. The court found that the Casino Gambling Act's repeal frustrated the basis for which MGC tendered the fee. It reasoned that Section 21(a)'s non-refundability provision therefore could not be applied. It based its ruling for MGC upon general equitable restitutionary principles as well as upon contract doctrines of frustration, failure of consideration, impossibility of performance, supervening illegality and anticipatory repudiation.

The standard for reviewing a grant or denial of a motion for summary judgment is well-settled. Under Federal Rule of Civil Procedure 56(c), summary judgment is proper when it appears that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The reviewing court's role is limited to determining whether there is a genuine issue of material fact and, if not, whether the substantive law was correctly applied. Hernandez v. Southern Nevada Culinary & Bartenders, 662 F.2d 617, 619 (9th Cir. 1981); Yazzie v. Olney, Levy, Kaplan & Tenner, 593 F.2d 100, 102 (9th Cir. 1979).

Because the facts are undisputed, the questions on appeal are purely legal. We find that the trial court erred in holding that the Casino Gambling Act's repeal frustrated the statutory purpose for which MGC paid the application fee, and thus caused a failure of consideration. A gaming act's provision must be construed in a manner so as to render them compatible with each other. State v. Rosenthal, 93 Nev. 36 559 P.2d 830, 836 (Nev. 1977), appeal dism. 434 U.S. 803, 98 S.Ct. 32, 54 L.Ed. 2d 61 (1977). Our reading of the Casino Gambling Act convinces us that the sole purpose of the Section 21(a) application fee was to enable MGC to obtain a preliminary investigation of its qualifications pursuant to Section 13. The application fee entitled MGC

412

only to consideration and disposition of its application. The review process ended with the application's provisional approval on September 17, 1979. At that point in time, the statutory purpose for which MGC had paid its $10,000 had been fulfilled completely. Therefore, the trial court erred by invoking frustration, impossibility, and other equitable contract doctrine to relieve MGC from the transaction.

If the money which MGC paid had been a license fee, we would have a different case. As the NMI concedes,[3] unearned portions of license fees are recoverable under general restitutionary principle. See, e.g., Bart v. Pierce County, 60 Wash. 507, 111 P. 582, 583 (Wash. 1910). The Casino Gambling Act, Section 2(k), defined a "license fee" as "any monies required by law to be paid to obtain or review a gaming license." However, as the introductory sentence in Section 2 warned, this definition applied unless the context suggested otherwise.

In Section 21(a), the context suggested otherwise. Section 21(a) clearly contemplated two distinct fees. One was the initial application fee. The second was a "$1,000,000 - or - 20% -of- revenue" fee to be paid by applicants who had been granted licenses. The second fee is the license

---

[3] Appellant's Opening Brief at 20.

fee which MGC could have wholly or partially recovered if MGC had paid it. MGC never paid the fee because it never received final approval for a license. The provisional license plainly stated that MGC could not yet conduct casino gambling. It also listed certain steps which MGC would have to take to secure final approval. Under the facts presented, the Court cannot conclude that the money which MGC paid was anything other than a mere application fee. Bart and other license fee cases relied upon by MGC are simply not on point. Because MGC received the preliminary assessment for which it paid the application fee, it is not equitably entitled to recover any of the remittance.

Citing Ex Parte McCardle, 74 U.S. 506, 19 L.Ed. 264, 265 (1869) and 1A Sutherland, Statutory Construction §23.33 (4th Ed. 1972) (1A Sutherland), MGC states that a repealed Act is treated as if it never existed. MGC contends that therefore it is entitled to a refund because the repeal of the Casino Gambling Act nullified Section 21(a)'s provision that the application fee was nonrefundable.

The Court rejects this creative but fatally flawed argument. Unless express or implied legislative intent indicates otherwise, the repeal of a statute operates only prospectively; it does not undo the consequences of its operation while it was in force. Chism v Phelps, 228 Ark. 936, 311 S.W. 2d 297, 77 ALR 2d 329, 335 (Ark. 1958).

414

As clearly stated by both authorities upon which MGC relies, a repealed statute is treated as if it never existed except as to transactions past and closed. Ex Parte McCardle, 19 L.Ed. at 265; 1A Sutherland §23 at 279. The assessment of MGC's application was a transaction which was past and closed as of September 17, 1979. The November, 1979 referendum measure neither expressly nor implicitly indicated that the repeal of the Casino Gambling Act would operate against such transactions.

The Court accordingly rejects MGC's additional assertion that the NMI's retention of the application fee violates the Fifth Amendment to the United States Constitution by depriving MGC of property without due process. As noted above, the NMI is legally entitled to retain the application fee. The NMI gave MGC what it paid for: an assessment and disposition of its application. Moreover, assuming arguendo that MGC claims a constitutionally protected property interest in a gaming license, we find no basis for that claim. To have a constitutionally protected property interest in a benefit, one must have a legitimate claim of entitlement to it. Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). A legitimate claim is one which is something more than a unilateral expectation of the benefit. Id. A person who receives a gaming license arguably obtains a property interest in the license; a person who has never been given a license clearly receives no such interest.

415

Rosenthal, 559 P.2d at 834. MGC never obtained final approval to conduct casino gambling. At most, its interest in licensure was a constitutionally unprotected unilateral expectation.

In paying its application fee to the NMI, MGC took a chance on the future of casino gambling in the Northern Mariana Islands. In November, 1979, the electorate decided that casino gambling was to have no future. MGC "cannot be permitted to speculate upon the community's not exercising its constitutional powers and then claim that the community is barred from interfering with the speculation." Primm v. City of Reno, 70 Nev. 7 252 P.2d 835, 838 (Nev. 1953).

The Judgment is REVERSED. The cause is REMANDED for entry of judgment for the NMI.

ENTERED: March 4, 1983

_____
CRISTOBAL C. DUENAS, District Judge

_____
ROBERT F. PECKHAM, District Judge

_____
ROBERT E. MOORE, Designated Judge