ROBERT COHEN, APPELLANT, v. THE STATE OF NEVADA; NEVADA GAMING COMMISSION; AND THE STATE GAMING CONTROL BOARD, RESPONDENTS.

No. 26905

January 5, 1997

930 P.2d 125

[Rehearing denied June 10, 1997]

*Lionel Sawyer & Collins* and *David N. Frederick,* Las Vegas, for Appellant.

*Frankie Sue Del Papa,* Attorney General and *Paul S. Lychuk,* Deputy Attorney General, Carson City, for Respondents.

## OPINION

By the Court, SPRINGER, J.:

The State of Nevada entered into an agreement with appellant Robert Cohen that it would not consider Cohen's past criminal record as grounds for denying "any" application for a restricted gaming license. The State repudiates its agreement and, contrary to its agreement, has denied Cohen's application based upon "his prior bad acts." The State does not argue that it has not violated its agreement; it merely says that Cohen cannot do anything about it and that its violation of the agreement is "not subject to judicial review." We reverse the trial court's dismissal of Cohen's complaint for judicial review and hold that the State is morally and legally bound to honor its agreement.

We take the facts of this case from the State's answering brief. The agreement between the State and Cohen takes the form of a formal, written stipulation executed by Cohen and the Gaming Control Board and "accepted by the [Gaming] Commission." The intent and purpose of the stipulation was to resolve a complaint that the State had filed against Cohen to revoke his gaming

license at the Downtowner Hotel in Las Vegas, based on Cohen's felony conviction. Cohen stipulated that he would relinquish his gaming license and pay a $2,000.00 fine; and the State stipulated that Cohen's felony conviction would not be used as the "sole grounds" to deny "*any* subsequent applications" that he might make for a restricted gaming license. (Emphasis added.)

According to the State's brief, Cohen, in 1990, applied for a new license at the Downtowner; and

> "[p]ursuant to the terms of the Stipulation [], since COHEN had not had any further problems and the location remained suitable, the Board [in accordance with its stipulation] did not consider COHEN's prior bad acts, and recommended that COHEN be granted a new restricted license to conduct gaming at the Downtowner Hotel. []. The COMMISSION considered the matter . . . and . . . granted COHEN a new restricted license to conduct gaming at the Downtowner Hotel.

In 1994, Cohen filed another, "subsequent application[]," relying on the stipulation, which specifically provided for Cohen's "applying for a gaming license at a location(s) *other than* [the Downtowner]." (Emphasis added.) When Cohen applied in 1994 for a license at the other location, namely, the Center Strip Inn, the Board, despite its previously having recommended licensing on Cohen's 1990 application, decided to repudiate its agreement, and, as put in the State's brief,

> After considering COHEN's arguments for licensure, the BOARD recommended that the application be denied based upon COHEN's prior "bad acts."
>
> The COMMISSION considered COHEN's Center Strip Inn application and the terms of the Stipulation in its May 1994 meeting. []. COHEN then argued that the Stipulation did apply to license applications for new locations. []. The COMMISSION disagreed and voted unanimously to follow the recommendation of the BOARD and deny COHEN's application based upon his prior bad acts.

In response to the State's actions, Cohen filed a civil complaint urging that the State's agreement was legally enforceable against the State and that the stipulation barred the State from denying his "application based upon his prior bad acts." As said above, the State does not deny that it violated the stipulation; it merely argues that Cohen cannot do anything about it. According to the State's brief, the State's contractual obligation under the stipulation has "no bearing on whether or not the District Court had jurisdiction to consider COHEN's civil action appealing the

denial of a gaming license application''; and, also according to the State's brief, the district court did not even ''consider the terms of the Stipulation.''

The State misapprehends the issue raised by Cohen on appeal. Cohen is not, as claimed by the State, ''appealing the denial of a gaming license''; rather, Cohen is collaterally attacking the improper and oppressive manner in which his gaming application was treated by the State. In his opening brief, Cohen expresses his understanding that ''[o]rdinarily [there is no] judicial review of the denial of a gaming license.'' Cohen's only claim in this appeal is that

> an agreement made with an existing licensee, and the prior conduct of the Board and the Commission gave plaintiff judicially recognized rights not otherwise possessed by previously unlicensed applicants. Consequently, the dismissal of plaintiff's claims should be reversed and plaintiff's action remanded for further proceedings.

We agree.

At first blush, it might appear that the district court was correct in denying judicial review. NRS 463.220(7) provides that the ''commission has full and absolute power and authority to deny any application for any cause it deems reasonable.'' In addition, ''[j]udicial review is not available for actions, decision and orders of the commission relating to the denial of a license . . . .'' NRS 463.318(2). In the face of such clear statutory language one might wonder if judicial intervention is *ever* warranted in cases involving denial of a gaming license; still, there are cases in which judicial intervention in gaming matters is called for. For example, if an applicant were to make a claim that the administrative action denying an application was tainted by reason of corruption or coercion of public officials in the form of gaming control administrators' being bribed or coerced into denying the license, judicial cognizance would have to be given to such a claim. In such an instance the legislature must be assumed not to have had either the power or the intention to deprive a judicial forum to one making claims of this nature.

Although, generally speaking, the granting of a privileged gaming license is a discretionary act not subject to judicial review, this does not mean that *ultra vires* actions which go beyond the powers granted to administrative agencies and personnel are immune from collateral review by the courts. The case now before us does not involve such extremes as official corrup-

tion, but it does involve improper and unlawful repudiation of a stipulated agreement between the State and a license applicant. There appears to be no doubt here that the State entered into a contract with Cohen, that the State legally obligated itself to refrain from doing certain things and that it later refused to honor that agreement. The courts cannot countenance such a cavalier trodding upon its citizens' legal rights. As put in Williams·v. City of North Las Vegas, 91 Nev. 622, 626, 541 P.2d 652, 655 (1975): "[W]hether to enter into the contract in the first instance was within the discretion of the city, but once the contractual relationship was established, the contract became an operational function imposing upon the city the duty [to perform under the contract]." In the case before us, the State had wide discretion as to whether to enter into the contract, but once the contractual relationship was established, performance of the contract, in the language of *Williams,* "became an operational function" imposing upon the State the moral and legal duty to abide by its agreement.

Cohen is not asking the court to order that he be granted a license; all he asks is that the State act rightly and in accordance with its contractual obligation. He is certainly entitled to this much.

The district court's order dismissing Cohen's complaint is reversed, and the matter is remanded to the district court with instructions that it enter an order commanding the Gaming Board and the Gaming Commission to reconsider Cohen's application for a gaming license and that these agencies consider Cohen's application in the light of the binding 1990 stipulation that they not consider Cohen's criminal conviction "as the sole grounds" for denying his license application for the Center Strip Inn.

CHAIREZ, D. J., and SULLIVAN, D. J., concur.[1,2]

SHEARING, J., dissenting with whom STEFFEN, C. J., agrees:

In 1978, Robert Cohen was indicted and accused of an infamous crime against nature and statutory rape. He fled to Israel, and a bench warrant for his arrest was issued. He was eventually found, arrested and extradited from Israel. In 1982, Cohen was convicted of statutory rape. In 1989, the State Gaming Control Board ("the Board") filed a disciplinary complaint against Cohen to revoke his gaming license for the Downtowner Hotel based upon his conviction. Concerned about the timeliness of its action,

[1]The Honorable Don P. Chairez, Judge of the Eighth Judicial District Court, was designated by the Governor to sit in place of THE HONORABLE CLIFF YOUNG, Justice. Nev. Const. art. 6, § 4.

[2]The Honorable Jerry V. Sullivan, Judge of the Sixth Judicial District Court, was designated by the Governor to sit in place of THE HONORABLE ROBERT ROSE, Justice. Nev. Const. art. 6, § 4.

in 1990 the Board entered into an agreement ("the stipulation") with Cohen to dismiss the complaint in consideration of Cohen's payment of a $2,000 fine. The stipulation also provided that Cohen's gaming license for the Downtowner Hotel would expire in March 1994 and that the dismissed disciplinary complaint would not be used as the sole basis for the Board's recommendation to deny "any subsequent applications." The Nevada Gaming Commission ("the Commission") approved the stipulation.

Cohen applied for another license for the Downtowner Hotel to be effective after the March 1994 expiration. Based on the stipulation and the fact that there had been no additional problems since 1990, the Board recommended Cohen's application for approval. The Commission followed the Board's recommendation and granted Cohen another gaming license for the Downtowner Hotel.

In May 1994, Cohen applied for a gaming license for a new location, the Center Strip Inn, for which he had never held a license. At the hearing before the Board, the Board made clear that the stipulation was for the Downtowner Hotel only and did not cover any other locations. The Board recommended denial of Cohen's gaming license application for the Center Strip Inn. The Commission agreed with the Board and denied Cohen's application.

Cohen filed a petition for judicial review and a complaint in district court alleging breach of contract and equitable estoppel and seeking declaratory relief and damages. The district court held that under Nevada law there is no appeal from a denial of a gaming license application and granted the motion to dismiss. I agree with the district court.

The Nevada Legislature has made it crystal clear that the Nevada Gaming Commission has the absolute power and authority to deny any application for a gaming license. NRS 463.220(7) provides: "The commission has full and absolute power and authority to deny any application for any cause it deems reasonable." In NRS 463.0129 the legislature has declared the public policy of this state regarding gaming and has stated "[n]o applicant for a license or other affirmative commission approval has any right to a license or to the granting of the approval sought." Furthermore, "[j]udicial review is not available for actions, decisions and orders of the commission relating to the denial of a license or to limited or conditional licenses." NRS 463.318(2). In Parks v. Watson, 716 F.2d 646, 657 (9th Cir. 1983), the court said of the statutory language regarding the Commission's responsibility that "[i]t is difficult to conceive of language which could more forcefully leave a decision to the unbridled discretion of an agency."

In State of Nevada v. Rosenthal, 93 Nev 36, 559 P.2d 830, 434 U.S. 803 (1977), this court upheld the constitutionality of the licensing procedures of the Gaming Control Act. This court stated:

> The licensing and control of gaming requires special knowledge and experience. Nev. Tax Com. v. Hicks, 73 Nev. 115, 119, 310 P.2d 852 (1957); Dunn v. Tax Commission, supra. In Hicks, this court observed "the risks to which the public is subjected by the legalizing of this otherwise unlawful activity are met solely by the manner in which licensing and control are carried out. The administrative responsibility is great." Id. at 120.
>
> The legislature has been sensitive to these basic concepts. Members of the Gaming Control Board and Gaming Commission must have special qualifications suited to the important duties with which they are charged. NRS 463.023; 463.040. Their powers are comprehensive. NRS 463.130-144. Court intrusion is limited. As we noted in Gaming Control Bd. v. Dist. Ct., 82 Nev 38, 409 P.2d 974 (1966): "Any effort to obstruct the orderly administrative process provided by the Gaming Control Act casts serious doubt upon the ability of Nevada to control the privileged enterprise of gaming. Control does not exist if regulatory procedures are not allowed to operate. Courts owe fidelity to the legislative purpose. . ." Id. at 40. Indeed, judicial review is confined to a final decision or order of the Commission and then only in specified instances.

Id. at 41, 559 P.2d at 833-34.

In *Rosenthal,* this court went on to point out that the statutes distinguish between disciplinary action against existing licensees where court review is available and the granting of a new license which is not reviewable. *Id.* at 42, 559 P.2d at 834. Judicial review is afforded under the provisions of NRS 463.310 and 463.315 regarding review of disciplinary matters and NRS 463.343(1) regarding interpretation of statutes and regulations, but not under NRS 463.318(2) which provides "[j]udicial review is not available for actions, decisions and orders of the commission relating to the denial of a license or to limited or conditional licenses."

Despite the clear mandate of the Nevada Legislature that no judicial review is available for denial of a new gaming license, Cohen has sought this judicial review. He has also couched his complaint in terms of a claim for declaratory relief, a claim for breach of contract and damages, as well as a claim that the Board and Commission are equitably estopped from denying him a

license. However, all the claims essentially ask the court to review a decision of the Nevada Gaming Commission to deny a gaming license. Neither this court, nor the district court, is authorized to do that. NRS 463.318(2).

This court has held that parties cannot circumvent the dictates of NRS Chapter 463 by petitioning the court under the Uniform Declaratory Act, NRS Chapter 30. State of Nevada v. Glusman, 98 Nev. 412, 418, 651 P.2d 639, 643. In *Glusman*, the issue was the availability of injunctive relief, but the same principle is applicable here. Allowing relief under Chapter 30, where Chapter 463 forbids such relief, would render Chapter 463 nugatory and allow effective avoidance of the provisions specifically designed to regulate gaming in Nevada.

Cohen has asked the court to order the Commission to grant him a license. There is no jurisdiction for the court to do so. NRS 463.343(5) prohibits the court from granting any injunctive relief to any applicant for licensing. Furthermore, Cohen's request is based on the stipulation signed by the Board under which the Board agreed not to use Cohen's prior conviction as the sole basis for *recommending* a denial of his application. Even if the stipulation had been meant to apply to a new license and not just to the existing license at the Downtowner, the Commission has the sole authority to grant a license. Subsumed within that authority is the authority to decide how much weight to afford the stipulation. The Commission is not a party to the stipulation and cannot, consistent with its statutory duties, be bound by it.

Cohen's action seeking damages is also without merit. Even if NRS Chapter 463 were not abundantly clear in giving absolute, exclusive jurisdiction over the granting or denial of gaming licenses to the Commission, the state agencies would remain immune from liability. NRS 41.032 provides, in relevant part:

> [No] action may be brought under NRS 41.031 or . . . against . . . an officer or employee of the state or any of its agencies or political subdivisions which is:
>
> . . . .
>
> 2. Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the state or any of its agencies or political subdivisions or of any officer [or] employee . . . of any of these, whether or not the discretion involved is abused.

This court has defined discretionary acts as those which "require the exercise of personal deliberation, decision and judgment." Travelers Hotel v. City of Reno, 103 Nev. 343, 345-6, 741 P.2d 1353, 1354 (1987). This court has consistently held that the granting, withholding or revoking of a privileged license is a

discretionary act. County of Esmeralda v. Grogan, 94 Nev. 723, 725, 587 P.2d 34, 35 (1978). Clearly the denial of a license is a discretionary decision which renders the decisionmaker immune from suit. The federal district court in Rosenthal v. State of Nevada, 514 F. Supp. 907, 914 (D. Nev. 1981), explained the underlying policy reasons as follows:

> The members of the State Gaming Control Board and the Nevada Gaming Commission are charged with the awesome responsibility of regulating the gaming industry in Nevada and keeping undesirable elements out of the gaming industry. In this important area of public interest where the decisions made by these individuals often involve millions of dollars and the reputation of a whole state, there is a danger that a person who receives an adverse decision will retaliate and seek vengeance in the courts. The discretion and judgment of these officials in initiating administrative proceedings and in deciding matters of great public importance might be affected if their immunity from damages arising from those decisions was less than complete.

(Citations omitted.)

For the foregoing reasons, I would affirm the order of the district court dismissing Cohen's complaint.