**PRODUCTIONS & LEASING, etc., et al., Plaintiff,**

v.

**HOTEL CONQUISTADOR, INC., etc., et al., Defendants.**

**Civ. No. LV–81–97, HEC.**

United States District Court,
D. Nevada.

July 13, 1982.

Appendix Added to Opinion Oct. 13, 1983.

---

Thomas F. Pitaro, Las Vegas, Nev., Stanley I. Greenberg, Los Angeles, Cal., for plaintiff Productions & Leasing.

Jay H. Brown, Las Vegas, Nev., for defendant Hotel Conquistador, dba Tropicana Hotel.

Dennis Kennedy, Lionel, Sawyer & Collins, Las Vegas, Nev., for defendants Hotel Ramada of Nevada, Ramada Inns and Howard Johnson.

Edwards, Hunt, Pearson & Hale, Las Vegas, Nev., Shearer, Fields & Shearer, Los Angeles, Cal., for defendant Deil O. Gustafson.

Marquis & Haney, Las Vegas, Nev., Reed, Goldstein & Jenkins-Reed, Phoenix, Ariz., for defendant M. William Isbell.

D. Brian McKay, Atty. Gen., State of Nev., Gaming Div., Las Vegas, Nev., for defendants Nevada Gaming Com'n and its members, and for Nevada Gaming Control Bd. and its members.

## MEMORANDUM DECISION

CLAIBORNE, Chief Judge.

This matter is before the Court on a Motion to Dismiss Complaint and a Motion to Strike, filed April 17, 1981 and May 27, 1982, respectively, on behalf of the State Defendants, Nevada Gaming Commission, State Gaming Control Board, and certain of their members past and present.

The State Defendants move to strike the Plaintiff's Supplemental Points and Authorities in Opposition to Motion to Dismiss. The Plaintiff having failed to respond to the Motion to Strike, the Court hereby grants said motion pursuant to Rule 16(e) of the Rules of Practice of the United States District Court for the District of Nevada.

The State Defendants move for dismissal of the Complaint, as it pertains to said Defendants, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Proce-

dure. Said Defendants specifically attack the Eighth, Ninth and Tenth Claims for Relief, the only causes of action pertaining to said Defendants. The Eighth and Ninth Claims for Relief assert causes of action under Sections 1983 and 1985(3) of Title 42, respectively. The Tenth Claim for Relief asserts a cause of action arising from Sections 1961, 1962 and 1964 of Title 18.

ELEVENTH AMENDMENT GOVERNMENTAL IMMUNITY:

The Eleventh Amendment states:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

■ Although by its own terms this Amendment only prohibits suits undertaken against a state by citizens of another state, it is well established that the Eleventh Amendment also provides immunity from suit by a state's own citizens. *Employees of Dept. of Public Health and Welfare, Missouri v. Department of Public Health and Welfare, Missouri*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973); *Parden v. Terminal Ry. of Alabama State Docks Department*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964).

■ It is clear that 42 U.S.C. § 1983 did not abrogate Eleventh Amendment sovereign immunity. In *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), the United States Supreme Court states:

... § 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on the question of state liability which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the states. (*Id.* 440 U.S. at 345, 99 S.Ct. at 1147.)

This analysis applies with equal force to 42 U.S.C. § 1985(3).

■ As for the applicability of governmental immunity to an action brought under 18 U.S.C. §§ 1962 and 1964, this Court is guided in *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981), which stated:

In determining the scope of a statute, we look first to the language. If the statutory language is *unambiguous*, in the absence of "a clearly expressed legislative intent to the contrary, the language must ordinarily be regarded as conclusive." (Emphasis added.)

The legislative history of the RICO Act, as did the Civil Rights Act, fails to indicate that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States. The statutory language of the RICO Act is even less clear than the Civil Rights Act. One thing is clear: Section 1961 of Title 18 separately defines "state" and "person." The fact that a "state" is defined separately, coupled with the uncertainty of including a state within the definition of a "person" under the Act, forces the Court to conclude that the Act is ambiguous. Without a clear showing that Congress intended abrogation of the Eleventh Amendment governmental immunity, this Court will not infer that the RICO Act deprives the State of Nevada of its protection.

■ The Nevada Gaming Commission and the State Gaming Control Board have Eleventh Amendment governmental immunity from civil suits brought under 42 U.S.C. §§ 1983 and 1985(3), and 18 U.S.C. § 1964(c), which has been explicitly preserved by Nevada Revised Statute 41.-031(3) (1977). See *Rosenthal v. State of Nevada*, 514 F.Supp. 907 (D.Nev.1981), *Ginter v. State Bar of Nevada*, 625 F.2d 829 (9th Cir.1980)....

ABSOLUTE IMMUNITY:

■ As for the past and present members of the Nevada Gaming Commission and State Gaming Control Board named in this action, they have absolute immunity from suits for civil damages. *Rosenthal v. State of Nevada, supra.* The issues of

absolute and qualified immunity were most recently discussed by the United States Supreme Court in *Nixon v. Fitzgerald*, 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982); 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). As stated in *Harlow v. Fitzgerald, id.* at n. 30:

> This case involves no issue concerning the elements of the immunity available to state officials sued for constitutional violations under § 1983. We. have found previously, however, that "it would be untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials." *Butz v. Economou*, 438 U.S. [478] at 504 [98 S.Ct. 2894 at 2909, 57 L.Ed.2d 895].

> Our decision in no way diminishes the absolute immunity currently available to officials whose functions have been held to require a protection of this scope.

Therefore, the past and present members of the Nevada Gaming Commission and the State Gaming Control Board have absolute immunity from actions brought under § 1983, *Rosenthal v. State of Nevada, supra*, and § 1985(3), *Friedman v. Younger*, 282 F.Supp. 710, 716 (C.D.Cal.1968); *Toscano v. Olesen*, 189 F.Supp. 118, 119 (S.D.Cal. 1960).

As for the Plaintiff's claim under 18 U.S.C. § 1962, his civil action is brought pursuant to 18 U.S.C. § 1964(c), entitled "Civil Remedies," which states:

> (c) Any person injured by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the *damages* he sustains and the costs of the suit, including a reasonable attorney's fee. (Emphasis added.)

While *Rosenthal v. State of Nevada, Nixon v. Fitzgerald*, and *Harlow v. Fitzgerald* dealt with immunity from suits brought under § 1983, the United States Supreme Court cases support the doctrine of immunizing certain state and federal officials from *civil suits for damages* resulting from conduct within the "outer perimeter" of the responsibilities, performance and function of those officials.

The Nevada Supreme Court spelled out its view of the gaming industry:

> As before noted, gaming is a privilege conferred by the state and does not carry with it the rights inherent in useful trades and occupations. (Citations omitted.)

> We view gaming as a matter reserved to the states within the meaning of the Tenth Amendment to the United States Constitution. Within this context we find no room for federally protected constitutional rights. This distinctively state problem is to be governed, controlled and regulated by the state legislature and, to the extent the legislature decrees, by the Nevada Constitution.

> It is apparent that if we were to recognize federal protections of this wholly privileged state enterprise, necessary state control would be substantially diminished and federal intrusion invited.

*State of Nevada v. Rosenthal*, 93 Nev. 36, 44–45, 559 P.2d 830 (1977), *appeal dismissed*, 434 U.S. 803, 98 S.Ct. 32, 54 L.Ed.2d 61 (1977). Under NRS 463.220, the State Gaming Control Board presents the Nevada Gaming Commission with a recommendation as to issuance of a gaming license. The Nevada Gaming Commission:

> has full and absolute power and authority to deny any application for any cause *it* deems reasonable. (NRS 463.220(7)). (Emphasis added.)

The Nevada Gaming Commission, aided by the State Gaming Commission, has the special and the "awesome responsibility of regulating the gaming industry and keeping undesirable elements out of the gaming industry," *Rosenthal v. State of Nevada, supra*, 559 P.2d at 914. The Board and Commission have broad authority and their members must have the reasonably unfettered ability to fulfill their responsibilities under the Nevada Gaming Control Act. See Gaming Regulation 3.080.

■ Therefore, the past and present members of the Nevada Gaming Commis-

sion and the State Gaming Control Board named in this suit are absolutely immune from a civil suit brought pursuant to 18 U.S.C. § 1964(c).

## BURFORD ABSTENSION DOCTRINE:

 The State Defendants move for the Court to abstain under *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). This is known as the Burford Abstension Doctrine which allows the federal courts to refrain from ruling on an essentially local issue arising out of a complicated state regulatory scheme. As stated in *Knudsen Corp. v. Nevada State Dairy Commission*, 676 F.2d 374, 377 (9th Cir.1982):

> Its application generally requires first, that the state has chosen to concentrate suits challenging the actions of the agency involved in a particular court; second, that federal issues could not be separated easily from complex state law issues with respect to which state courts might have special competence; and third, that federal review might disrupt state efforts to establish a coherent policy.

As stated in *International Brotherhood of Electrical Workers Local 1245 v. Public Service Commission of Nevada*, 614 F.2d 206, 211 (9th Cir.1980), and cited in *Knudsen Corp. v. Nevada State Dairy Commission, supra* at 377:

> This circuit has been careful to avoid extending *Burford.*

The record has not developed to the point where I can say that the facts and circumstances warrant the extension of the *Burford* abstension doctrine to this case. Therefore, abstention would be inappropriate at this time.

Assuming *arguendo* that the State Defendants are not immune from this action for civil damages, the Eighth, Ninth and Tenth Claims for Relief fail for several reasons, and each will be discussed individually.

## EIGHTH CLAIM FOR RELIEF:

 Under the Eighth Claim for Relief, the Plaintiff alleges that a cause of action exists under 42 U.S.C. § 1983. In order for the complaint to state a cause of action under § 1983, the Plaintiff must have alleged that the State Defendants, under color of state or territorial law, have deprived it of some right, privilege, or immunity secured by the Constitution or laws of the United States. *Gomez v. Toledo*, 446 U.S. 635, 639, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980); *Freier v. New York Life Insurance Company*, 679 F.2d 780, 783 (9th Cir.1982). But, vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss. *Ivey v. Board of Regents of University of Alaska*, 673 F.2d 266, 268 (9th Cir.1982).

 The Plaintiff alleges that it had a constitutionally protected property right in a showroom extravaganza presented at the Tropicana Hotel and Country Club known as the "Folies Bergere." It further alleges that the State Defendants threatened Hotel Ramada of Nevada with possible gaming licensure difficulties if it contracted directly with Joseph Agosto, as agent for Plaintiff, for the purchase of the "Folies Bergere." It alleges that due to these "threats," it was "wrongfully deprived" of its property. Such an allegation is vague and conclusory.

The Eighth Claim for Relief does not allege in what manner it was deprived of its property. If the Hotel Ramada of Nevada did, in fact, refuse to negotiate the sale of the "Folies Bergere" through Joseph Agosto, the complaint fails to show that the Plaintiff was deprived of its interest in the "Folies Bergere" by the failure to negotiate with Joseph Agosto. The complaint states causes of action for monies due and owing, false misrepresentation, fraudulent conveyance, conspiracy to defraud, and collection of a promissory note. The fact that the Plaintiff had problems with the contracts it had with Hotel Ramada of Nevada and Hotel Conquistador, Inc., is not due to any conduct on the part of the State Defendants. Clearly the allegations concerning any § 1983 claim are vague and conclusionary.

■ Further, the Plaintiff fails to allege a deprivation of a constitutionally protected property right. As stated in *Havas v. Thornton*, 609 F.2d 372, 374 (9th Cir. 1979):

> It is well settled that in order to recover either under § 1983 or § 1985(3) it is necessary to allege facts showing a deprivation of rights secured by the Constitution or laws of the United States, and that merely because the acts are performed by public officials, a state-law tort claim is not thereby transmuted into one for the deprivation of rights secured under the Fourteenth Amendment.

The Plaintiff's claims are based purely on state causes of action. Along with the previously mentioned claims, the allegations in the Eighth Claim for Relief suggest that the State Defendants are being sued for tortious interference with an economic advantage. The Plaintiff does not have a right to contract and negotiate with Hotel Ramada of Nevada directly, much less deal through Joseph Agosto as the Plaintiff's agent. The Hotel Ramada of Nevada chose not to negotiate with the Plaintiff through Joseph Agosto in order to avoid difficulty in acquiring a gaming license from the State Defendants. While the Plaintiff uses the word "threat" throughout the complaint, the factual allegations indicate the State Defendants "informed" the Hotel Ramada of Nevada of the potential for licensure difficulties. Whether it was a "threat" or an "informed suggestion," such was within the power of the State Defendants. *State v. Rosenthal*, 93 Nev. 36, 559 P.2d 830 (1977), *appeal dismissed*, 434 U.S. 803, 98 S.Ct. 32, 54 L.Ed.2d 61 (1977); NRS 463.220. To say that the Plaintiff has a constitutionally protected right to negotiate with the Hotel Ramada of Nevada would constitutionally deprive the Hotel Ramada of Nevada of the freedom to negotiate and contract in its own best interest. Such a conclusion would be absurd. Also see *Rutledge v. Arizona Bd. of Regents*, 660 F.2d 1345 (9th Cir.1981).

In short, the Plaintiff's Eighth Claim for Relief is irreparably vague and conclusionary.

### NINTH CAUSE OF ACTION:

■ The previous discussion of Eighth Claim for Relief applies with equal force to the Ninth Claim for Relief which alleges that a cause of action exists under 42 U.S.C. § 1985(3). See *Havas v. Thornton*, *supra* at 374. But another ground for dismissal of this claim exists.

In *Life Ins. Co. of North America v. Reichardt*, 591 F.2d 499, 502 (9th Cir.1979), the Ninth Circuit quoted *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), where the Supreme Court enumerated the elements of a cause of action under § 1985(3):

> A complaint must allege that the defendant did (1) "conspire or go in disguise on the highway or on the premises of another" (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." It must then assert that one or more of the conspirators (3) did, or cause to be done, "any act in furtherance of the object of [the] conspiracy," whereby another was (4a) "injured in his person or property" or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States."

*Id.* at 102–03, 91 S.Ct. at 1798–99. The Ninth Circuit in *Life Ins. Co. of North America v. Reichardt*, *supra* at 503, went on to quote *Lopez v. Arrowhead Ranches*, 523 F.2d 924, 926–27 (9th Cir.1975) where this court explained *Griffin* as creating a cause of action for any tortious interference with a legally protected right if motivated by the requisite class-based animus:

> [The] [*Griffin*] Court, recognizing that the statutory language, taken literally, might be construed to give a claim for every conspiratorial tortious interference with a legally protected interest (the equal status being to be protected by law from *All intrusions on legal rights*), limited the statute's application to con-

form to the drafters' perceived intent. (Emphasis added.)

"The constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law can be avoided by giving full effect to the congressional purpose—by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment. See the remarks of Representatives Willard and Shellabarger, quoted *supra* at 100. The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all."

The Plaintiff has failed to allege facts to demonstrate the requisite racial, or other class-based, invidious discriminatory animus; therefore, the Ninth Claim for Relief fails to state a claim under § 1985(3).

TENTH CLAIM FOR RELIEF:

The Tenth Claim for Relief is based on the Racketeer Influence and Corrupt Organizations provision of the Organized Crime Control Act of 1970, 18 U.S.C. §§ 1961 et seq.; specifically § 1964(c).

Again, Plaintiff's complaint is vague and conclusory in its allegations concerning any injury to its business or property. The alleged conduct on the part of the State Defendants concerns informing a potential licensee of possible difficulties with obtaining a gaming license from the State. Plaintiff's allege that such conduct "deprived" it of its interest in the "Folies Bergere."

■ The Plaintiffs specifically allege that the State Defendants' conduct was a violation of § 1962(c) which states:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

The Plaintiff asserts that the State Defendants participated in a conspiracy whose object was to acquire the Plaintiff's interest in the "Folies Bergere" through a pattern of racketeering activity as defined in § 1961(1)(B). Said pattern of activity was to have involved violations of 18 U.S.C. §§ 1341 (relating to mail fraud) and 1343 (relating to wire fraud). But, as stated in *Adair v. Hunt Intern. Resources Corp.,* 526 F.Supp. 736, 746 (N.D.Ill.1981):

This acknowledgement, of course, does not end the inquiry for it "is a 'familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intentions of its makers.' " *United States Steelworkers of America v. Weber,* 443 U.S. 193, 201, 99 S.Ct. 2721, 2727, 61 L.Ed.2d 480 (1979), *quoting, Holy Trinity Church v. United States,* 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892). Instead, the reach of the Organized Crime Control Act must be determined by reference to its legislative history and the purposes of the statute. An examination of these sources indicates that the OCCA was not intended for the use proposed by plaintiffs—that of a federal common law of fraud.

Even assuming that it does state a cause of action, although it is too vague and conclusionary to do so, the RICO Act was not intended for the circumstances presented here.

The State Defendants informed the Hotel Ramada of Nevada of potential licensure problems if it dealt with Joseph Agosto for the purchase of the "Folies Bergere." This is not a conspiracy, but the State Defendants carrying out its responsibilities under the Nevada Gaming Control Act. Such is not enough to allege that the State Defendants were "employed by" or "associated with" an "enterprise."

"DOE" DEFENDANTS:

 The State Defendants further move that the "Doe" Defendants be stricken from the Complaint. Defendants are correct. The Ninth Circuit bars the use of "Doe" Defendants, and such Defendants may be stricken by the Court sua sponte. *Craig v. United States,* 413 F.2d 854, 856 (9th Cir.1969); *Wiltsie v. California Department of Corrections,* 406 F.2d 515, 518 (9th Cir.1968); *Tolefree v. Ritz,* 382 F.2d 566, 567 (9th Cir.1967); *Rosenthal v. State of Nevada, supra,* 559 P.2d at 914 (1981). However, it is permissible where the identity of the alleged defendant is not known at the time of the filing of the complaint. In such circumstances, the plaintiffs should have an opportunity through discovery to identify the unknown defendants. *Gillespie v. Civiletti,* 629 F.2d 637 (9th Cir.1980); *Swartz v. Gold Dust Casino, Inc.,* 91 F.R.D. 543, 546 (D.Nev.1981). This exception does not exist in this case; therefore, the "Doe" Defendant allegations should be stricken.

In conclusion, the State Defendants are absolutely immune, either as a sovereign or as an official, from suit in this action. Further, had the State Defendants not been immune, the Eighth, Ninth and Tenth Claims for Relief are irreparably vague and conclusionary.

WHEREFORE, IT IS ORDERED:

1) That the Motion to Strike, filed May 27, 1982, on behalf of the Nevada Gaming Commission, the State Gaming Control Board, and their past and present members in this action, is hereby granted and that the Memorandum of Supplemental Points and Authorities in Opposition to Motion to Dismiss, filed May 18, 1982, on behalf of the Plaintiff, is hereby stricken.

2) That the Memorandum of Supplemental Points and Authorities in Support of Motion to Dismiss, filed June 18, 1982, on behalf of the Nevada Gaming Commission, the State Gaming Control Board, and their past and present members named in this action, is hereby stricken.

3) That the Motion to Dismiss Complaint, filed April 17, 1981, on behalf of the Nevada Gaming Commission, the State Gaming Control Board, and their past and present members named in this action, is hereby granted.

4) That the Nevada Gaming Commission, the State Gaming Control Board, and their past and present members named in this action, are hereby dismissed from this action as party-defendants.

5) That Does I through XX, inclusive, be dismissed from this action as party-defendants.

6) That the Plaintiff shall have to and including August 13, 1982 by 4:00 p.m. within which to file and serve an Amended Complaint consistent with this Decision.

APPENDIX

COMPLAINT

COMES NOW Plaintiff, PRODUCTIONS & LEASING, LTD., by and through its Counsel, THOMAS F. PITARO, ESQUIRE, and complains of Defendants, and each of them, as follows:

That this Complaint seeks money damages in excess of TEN THOUSAND DOLLARS ($10,000.00) and other relief as set forth herein pursuant to 18 U.S.C. §§ 1961 through 1964, inclusive, and 42 U.S.C. §§ 1983 and 1985. This Court has jurisdiction pursuant to 28 U.S.C. § 1343(3). Plaintiff further seeks to invoke the pendant jurisdiction of this Court.

FIRST CLAIM FOR RELIEF

(MONIES DUE AND OWING)

I.

At all times relevant herein, Plaintiff was and is a Nevada corporation doing business in Clark County, Nevada.

II.

Plaintiff is informed and believes, and based upon such information and belief, alleges, that Defendant, HOTEL CONQUISTADOR, INC., d/b/a TROPICANA

HOTEL AND COUNTRY CLUB, hereinafter referred to as "HCI", is a Nevada corporation doing business in Clark County, Nevada.

### III.

Plaintiff is informed and believes, and based upon such information and belief alleges, that Defendant, HOTEL RAMADA OF NEVADA, hereinafter referred to as "HRN", is a Nevada corporation doing business in Clark County, Nevada.

### IV.

Plaintiff is informed and believes, and based upon such information and belief alleges, that Defendant, RAMADA INNS, INC. is a Delaware corporation authorized to do business in the State of Nevada.

### V.

Plaintiff is informed and believes, and based upon such information and belief alleges, that Defendant, DEIL O. GUSTAFSON, was and is an officer and director of Defendant HCI.

### VI.

Plaintiff is informed and believes, and based upon such information and belief alleges, that Defendant, HOWARD JOHNSON, was and is an officer and director of Defendant, RAMADA INNS, INC.

### VII.

Plaintiff is informed and believes, and based upon such information and belief alleges, that Defendant, M. WILLIAM ISBELL was and is an officer and director of Defendant, RAMADA INNS, INC.

### VIII.

That Defendant, NEVADA GAMING COMMISSION, hereinafter referred to as "COMMISSION", is a duly created state agency of the State of Nevada, and its members past and present: HARRY M. REID, STUART INGS, SARAH STELTER, CARL DODGE, JACK WALSH, CLAIR HAYCOCK, WALTER COX, GEORGE SWARTS, and RICHARD MACDOUGALL, are the authorized agents of said COMMISSION.

### IX.

That Defendant, NEVADA GAMING CONTROL BOARD, hereinafter referred to as "BOARD", is a duly created state agency of the State of Nevada, and its members past and present: RICHARD W. BUNKER, DALE ASKEW, JACK STRATTON, GLEN MAULDIN, and ROGER TROUNDAY, are the authorized agents of said BOARD.

### X.

That Defendants, DOES I through XX, inclusive, are fictitious names of Defendants whose names and capacities are not presently known to Plaintiff and when said names and capacities are ascertained, Plaintiff will seek leave to amend the complaint.

### XI.

That on and before December 7, 1979, Plaintiff, PRODUCTIONS & LEASING, LTD., was the owner of all the right, title and interest in that theatrical production known as the "FOLIES BERGERE SHOW", which included tangible personal property, stage sets, equipment, together with all right, title, and interest in and to that contract by and between MRS. HELENE MARTINI and HOTEL CONQUISTADOR, INC., as such contract has been amended by that amendment of June 5, 1979, including without limitation, the use of the name, "FOLIES BERGERE", through the 15th day of March, 1981, inclusive, and good will and other intangible personal property, used in or associated with Plaintiff's production of the "FOLIES BERGERE SHOW" at the TROPICANA HOTEL AND COUNTRY CLUB, Las Vegas, Nevada.

### XII.

That on or about December 7, 1979, Plaintiff and Defendant HCI entered into

that certain agreement styled "Purchase and Assumption Agreement", a true copy of which is attached hereto and marked as Plaintiff's Exhibit "A", wherein Defendant HCI agreed to purchase all of Plaintiff's interest in the "FOLIES BERGERE SHOW", as set forth above, for the sum of TWO MILLION SIX HUNDRED AND FIFTY THOUSAND DOLLARS ($2,650,000.00).

### XIII.

That on or about December 6, 1979, Defendant HCI assigned to Defendant HRN its rights and obligations in that certain agreement styled "Purchase and Assumption Agreement", marked Plaintiff's Exhibit "A" and incorporated by reference herein. A true copy of said Assignment is attached hereto and marked as Plaintiff's Exhibit "B".

### XIV.

That on or about December 7, 1979, Plaintiff consented to the assignment of all of Defendant HCI's right, title, interest and obligations to the "Purchase and Assumption Agreement", incorporated herein by reference, to Defendant HRN, a true copy of which is attached hereto and marked as Plaintiff's Exhibit "C".

### XV.

That on or about December 7, 1979, Defendant HCI purported to pay to Plaintiff, pursuant to the terms and conditions of the "Purchase and Assumption Agreement", above referred to, the sum of SEVEN HUNDRED THOUSAND DOLLARS ($700,000.00). Included as part of the payment of the SEVEN HUNDRED THOUSAND DOLLARS ($700,000.00), was a check in the amount of FIFTY THOUSAND DOLLARS ($50,000.00), drawn upon the order of Defendant HCI; said check failed to clear for payment due to insufficient funds being on deposit in the account of Defendant HCI, a true copy of said check is attached hereto and marked as Plaintiff's Exhibit "D".

### XVI.

That pursuant to Section XI of the "Purchase and Assumption Agreement", as shown by Plaintiff's Exhibit "A", Plaintiff gave to Defendants HCI and HRN ten (10) day notice to cure said default in the payment of the dishonored check for FIFTY THOUSAND DOLLARS ($50,000.00); an excess of ten (10) days has elapsed since the delivery of said letters to Defendants HCI and HRN and said Defendants HCI and HRN have refused and continue to refuse to pay the balance of the amounts due and owing to Plaintiff. True copies of said demand for payment is attached hereto and marked as Plaintiff's Exhibits "E(1)" and "E(2)".

### XVII.

That pursuant to Section XI of said "Purchase and Assumption Agreement", Plaintiff has the right to declare the entire balance of TWO MILLION DOLLARS ($2,000,000.00) together with interest at the rate of six percent (6%) per annum, immediately due and owing, and Plaintiff has elected to do so.

### XVIII.

Defendant HCI, HRN and DOES I through X, and each of them, are indebted to Plaintiff in the sum of TWO MILLION DOLLARS ($2,000,000.00), together with interest at the rate of six percent (6%) per annum.

### XIX.

Plaintiff has been compelled to retain the services of an attorney to prosecute this action and is therefore entitled to reasonable attorney fees.

### SECOND CLAIM FOR RELIEF

(False Misrepresentation)

### I.

Plaintiff, PRODUCTIONS & LEASING, LTD., incorporates herein by reference Paragraphs I through XIX of its First

Claim for Relief as though fully set forth herein at length.

## II.

That on or about December 7, 1979, Defendants HCI, HRN, DEIL O. GUSTAFSON, individually and as an officer and director of Defendant HCI, HOWARD JOHNSON, individually and as an officer and director of Defendant RAMADA INNS, INC., M. WILLIAM ISBELL, individually and as an officer and director of Defendant, RAMADA INNS, INC., and RAMADA INNS, INC., and DOES I through X, and each of them, made to Plaintiff certain false representations, intending thereby to injure and defraud the Plaintiff and to induce the Plaintiff to sell to Defendant HCI, pursuant to that certain "Purchase and Assumption Agreement", as shown by Plaintiff's Exhibit "A", all of Plaintiff's right, title and interest in the "FOLIES BERGERE SHOW", above referred to, and to further induce Plaintiff to consent to the assignment by Defendant HCI of it's right, title, interest and obligations in said "Purchase and Assumption Agreement" to Defendant HRN, as shown by Plaintiff's Exhibit "C".

## III.

That these representations made by the Defendants HCI, HRN, DEIL O. GUSTAFSON, individually and as an officer and director of Defendant HCI, HOWARD JOHNSON, individually and as an officer and director of RAMADA INNS, INC., M. WILLIAM ISBELL, individually and as an officer and director of Defendant RAMADA INNS, INC., and RAMADA INNS, INC., were as follows:

a) That Plaintiff would receive, at the time of closing of the sale, conveyance and transfer of all, or substantially all, of Defendant HCI's assets and business to Defendant HRN, the sum of SEVEN HUNDRED THOUSAND DOLLARS ($700,000);

b) That Defendant HCI would receive from Defendant HRN periodic payment in the sums of FOUR MILLION DOL-LARS ($4,000,000) no later than the end of the thirteenth (13th) full month after closing on December 7, 1979; FOUR MILLION DOLLARS ($4,000,000) no later than the end of the twenty-fifth (25th) full calendar month after closing, on December 7, 1979; that the full amount due and owing to Plaintiff by Defendant HCI would be paid to Plaintiff out of these said funds.

## IV.

That aforesaid representations were false in that:

a) Defendant HCI did not have sufficient funds in the account to cover the total amount of SEVEN HUNDRED THOUSAND DOLLARS ($700,000), purportedly paid to Plaintiff in Section III, Subsection (a) of the "Purchase and Assumption Agreement", as shown by Plaintiff's Exhibit "A".

b) That the periodic payments of FOUR MILLION DOLLARS ($4,000,000) each, above referred to, due to Defendant HCI by Defendant HRN on the 13th, 25th and 37th full calendar months after closing on December 7, 1979, were contingent and not absolute as to payment from Defendant HRN to Defendant HCI, as said payments were only due, if at all, if Defendant HRN made sufficient net pre-federal income tax profits to cover said payments;

and each of the named Defendants well knew of their falsity.

## V.

That Plaintiff was, however, induced by such representations to sell to Defendant HCI all its right, title and interest in that property known as the "FOLIES BERGERE", more particularly described above in Paragraph XI of Plaintiff's First Claim for Relief and incorporated herein by reference, and consent to the assignment by the Defendant HCI to Defendant HRN of its right, title, interest and obligations in the said "Purchase and Assumption Agreement", as shown by Plaintiff's Exhibit "C", and but for said representations Plaintiff

would not have sold to Defendant HCI or consented to the assignment to Defendant HRN.

### VI.

That as a result of the named Defendants' false representations, Plaintiff has been damaged in the sum of TWO MILLION DOLLARS ($2,000,000).

### VII.

Defendants, and each of them, have acted with malice and oppression by fraudulently misrepresenting and concealing the above facts from Plaintiff and Plaintiff is therefore entitled to punitive damages in the sum of in excess of TEN THOUSAND DOLLARS ($10,000.00).

### THIRD CLAIM FOR RELIEF

(Fraudulent Conveyance)

### I.

Plaintiff, PRODUCTIONS & LEASING, LTD., hereby incorporates herein by reference Paragraphs I through XIX of its First Claim for Relief and Paragraphs I through VII of its Second Claim for Relief, as is fully set forth herein.

### II.

Plaintiff is informed and believes, and based upon such information and belief alleges that on or between June 29, 1979 through December 7, 1979, Defendants HCI and HRN entered into a contract whereby Defendant HCI agreed to sell, convey and transfer all, or substantially all, of its assets and business to Defendant HRN. A true copy of said agreement is attached hereto and made a part hereof and marked Plaintiff's Exhibit "F".

### III.

Plaintiff is informed and believes, and based upon such information and belief alleges that on or about December 6, 1979, Defendant HCI sold, conveyed and transferred all, or substantially all, of its assets and business to Defendant HRN. A true copy of said amendment to agreement marked Plaintiff's Exhibit "F" incorporated herein by reference, is attached hereto and made a part hereof and marked Plaintiff's Exhibit "G".

### IV.

That at the time said contract was entered into and/or when all, or substantially all, of the assets and business of Defendant HCI was sold, conveyed and transferred to Defendant HRN, Defendants HCI and HRN, and each of them, knew or had reason to know that there was and/or would be outstanding obligations past due and owing from Defendant HCI to Plaintiff.

### V.

Plaintiff is informed and believes, and based upon such information and belief alleges, that said sale, conveyance and transfer of all, or substantially all, of the assets and business of Defendant HCI to Defendant HRN was a fraudulent conveyance within the scope and meaning of Nevada Revised Statutes sections 112.010 through 112.130, inclusive, in that:

a) Defendant HCI sold, conveyed and transferred all, or substantially all of the assets and business to Defendant HRN for less than a fair consideration;

b) The sale, conveyance and transfer by Defendant HCI of all, or substantially all, of its assets and business to Defendant HRN rendered Defendant HCI insolvent;

c) Defendant HCI is in business and the amount of capital remaining in its hands after said sale, conveyance and transfer to Defendant HRN of all, or substantially all, of its assets and business, is unreasonably small;

d) The sale, conveyance and transfer of all, or substantially all, of the assets and business of Defendant HCI to Defendant HRN was made by Defendant HCI and HRN, and each of them, with the presumed and/or actual intent to hinder, delay, or defraud Plaintiff, PRODUCTIONS & LEASING, LTD., and other creditors.

## VI.

That due to the fraudulent conveyance, within the scope and meaning of Nevada Revised Statutes sections 112.010 through 112.130, inclusive, the said sale, conveyance and transfer of all, or substantially all, of Defendant HCI's assets and business to Defendant HRN should be set aside and held for naught.

## VII.

That as a result of the actions of the Defendants HCI, HRN, and DOES I through X, and each of them, Plaintiff has been damaged in the sum of TWO MILLION DOLLARS ($2,000,000.00).

## FOURTH CLAIM FOR RELIEF

### (Conspiracy to Defraud)

### I.

Plaintiff, PRODUCTIONS & LEASING, LTD., incorporates herein, Paragraphs I through XIX of its First Claim for Relief, and Paragraphs I through VII of its Second Claim for Relief, and Paragraphs I through VII of its Third Claim for Relief as though fully set forth herein at length.

### II.

On and before December 7, 1979, Defendants, and each of them, maliciously, and with intent to injure Plaintiff, conspired together to defraud Plaintiff so that it would enter into that "Purchase and Assumption Agreement", as shown by Plaintiff's Exhibit "A", with Defendant HCI and to further consent to the assignment of Defendant HCI's rights, title, interest and obligation in the said "Purchase and Assumption Agreement" as shown in Plaintiff's Exhibit "C", to Defendant HRN, by:

a) Misrepresenting to Plaintiff the financial ability of Defendant HCI to meet its obligations to Plaintiff pursuant to said "Purchase and Assumption Agreement", after the sale, conveyance and transfer of all, or substantially all, of its assets and business to Defendant HRN;

b) Misrepresenting to Plaintiff the terms and conditions and contingent nature thereof, concerning the amounts to be advanced to Defendant HCI by Defendant HRN for the sale, conveyance, and transfer of all, or substantially all, of Defendant HCI's assets and business to Defendant HRN; and

c) Further misrepresenting to Plaintiff that such amounts would be available for payment in satisfaction of Defendant HCI's obligations to Plaintiff pursuant to the said "Purchase and Assumption Agreement".

### III.

In furtherance of the conspiracy, Defendants, and each of them,

a) Misrepresented to Plaintiff the financial ability of Defendant HCI to meet its obligation to Plaintiff pursuant to said "Purchase and Assumption Agreement" after sale, conveyance and transfer of all, or substantially all, of Defendant HCI's assets and business to Defendant HRN;

b) Misrepresented to Plaintiff the availability of such funds referred to above for payment from Plaintiff from Defendant HCI in satisfaction of Defendant HCI's obligations under the "Purchase and Assumption Agreement"; and

c) Fraudulently conveyed, within the scope and meaning of Nevada Revised Statutes sections 112.101 through 112.-130,-inclusive, all, or substantially all, of Defendant HCI's assets and business to Defendant HRN.

### IV.

As a result of the wrongful acts and in reliance thereupon, herein described, Plaintiff entered into the "Purchase and Assumption Agreement" as shown by Plaintiff's Exhibit "A", and consented to the assignment of Defendant HCI's right, title, and interest and obligations to Defendant HRN, as shown by Plaintiff's Exhibit "C", which resulted in Plaintiff being damaged in the sum of TWO MILLION DOLLARS ($2,000,000.00).

### V.

In committing the acts herein alleged, Defendants, and each of them, acted with malice and oppression and Plaintiff is therefore entitled to punitive damages in the sum of in excess of TEN THOUSAND DOLLARS ($10,000.00).

### FIFTH CLAIM FOR RELIEF

(As Against Guarantor of Account)

### I.

Plaintiff, PRODUCTIONS & LEASING, LTD., incorporates herein by reference Paragraphs I through XIX of its First Claim for Relief, Paragraphs I through VII of its Second Claim for Relief, Paragraphs I through VII of its Third Claim for Relief, and Paragraphs I through V of its Fourth Claim for Relief, as though fully set forth herein at length.

### II.

Prior to the commencement of this action Defendant, RAMADA INNS, INC., unconditionally guaranteed Defendant HRN's obligations to Plaintiff, a true copy of which is attached hereto and made a part hereof at page 42 of Plaintiff's Exhibit "F", incorporated herein by reference, as amended by Plaintiff's Exhibit "G", incorporated herein by reference.

### III.

That in reliance upon the unconditional guarantee of Defendant, RAMADA INNS, INC., Plaintiff entered into the "Purchase and Assumption Agreement", as shown by Plaintiff's Exhibit "A", and further consented to the assignment of Defendant HCI's right, title, interest and obligations under the "Purchase and Assumption Agreement" to Defendant HRN, as shown by Plaintiff's Exhibit "C".

### IV.

That more than ten (10) days have elapsed from the inception of the indebtedness of Defendants HCI and HRN, to Plaintiff, and demand has been made by Plaintiff for payment, but Defendants have failed and refused to pay the amount due or any part thereof.

### V.

That Defendant, RAMADA INNS, INC., as the unconditional guarantor of Defendant, HCI, is indebted to Plaintiff in the sum of TWO MILLION DOLLARS ($2,000,-000.00), together with interest at the rate of six percent (6%) per annum.

### SIXTH CLAIM FOR RELIEF

(Alleging Existence of Agency)

### I.

Plaintiff, PRODUCTIONS & LEASING, LTD., incorporates herein by reference Paragraphs I through XIX of its First Claim for Relief, Paragraphs I through VII of its Second Claim for Relief, Paragraphs I through VII of its Third Claim for Relief, Paragraphs I through V of its Fourth Claim for Relief, and Paragraphs I through V of its Fifth Claim for Relief, as though fully set forth herein at length.

### II.

Plaintiff is informed and believes, and based upon such information and belief alleges that at all times mentioned herein, Defendants HCI and DOES I through X, and each of them, were the agents of Defendants HRN and DOES I through X, and each of them, and in doing the things thereafter mentioned, were acting within the scope of their authority as such agent and with the permission and consent of Defendants HRN and DOES I through X, and each of them.

### III.

On or about December 7, 1979, in Clark County, Nevada, Plaintiff and Defendant HCI entered into a "Purchase and Assumption Agreement", a true copy of which is attached hereto and made a part hereof and marked Plaintiff's Exhibit "A", by which Plaintiff agreed to transfer all rights, title and interest to that property known as the "FOLIES BERGERE", more

particularly described above in Paragraph XI of Plaintiff's First Claim for Relief and incorporated herein by reference, to Defendant HCI upon the payment of an agreed-upon purchase price.

### IV.

That at the time of entering into said "Purchase and Assumption Agreement", attached hereto and made a part hereof and marked Plaintiff's Exhibit "A", Plaintiff knew that said property known as the "FOLIES BERGERE", more particularly described above in Paragraph XI of Plaintiff's First Claim for Relief and incorporated herein by reference, was to be immediately assigned as part and parcel of the sale of the TROPICANA HOTEL by Defendant HCI to Defendant HRN. Said Assignment occurred on December 6, 1979, one day prior to the finalization of the transfer by Plaintiff to Defendant HCI of the "FOLIES" property. A true copy of said Assignment is attached hereto and made a part hereof and marked Plaintiff's Exhibit "B".

### V.

That Defendant HRN would not have entered into the Agreement for the sale of the Tropicana Hotel by Defendant HCI, a true copy of which is attached hereto and made a part hereof and marked Plaintiff's Exhibit "F", as later amended by Plaintiff's Exhibit "G", incorporated herein by reference, if the rights to the "FOLIES BERGERE SHOW" were not a part of the assets to be conveyed. Said acquisition by Defendant HCI of Plaintiff's property known as the "FOLIES" was a condition precedent to performance by Defendant HRN as Buyer of the Tropicana Hotel.

### VI.

That on or about December 6, 1979, Plaintiff was induced to sign a "Certificate", a true copy of which is attached hereto and made a part hereof and marked Plaintiff's Exhibit "H", to verify to Defendant HRN that Defendant's HCI assets included the rights to the "FOLIES BERGERE SHOW".

### VII.

That on or about December 6, 1979, immediately following the execution of the "Certificate" referred to above and incorporated by reference herein, Defendant HCI assigned all its right, title and interest to the "FOLIES BERGERE SHOW" to Defendant HRN, a true copy of said Assignment is attached hereto and made a part hereof and marked Plaintiff's Exhibit "B".

### VIII.

That due to the refusal by Defendant HRN to consummate said purchase of the Tropicana Hotel, without the rights to the "FOLIES BERGERE SHOW", and their unwillingness to negotiate for the sale of said property with Plaintiff, Defendant HCI became a special agent of Defendant HRN for this purpose.

### IX.

That Plaintiff's reliance on this special relationship was the cause of its selling the "FOLIES BERGERE SHOW" to Defendant HRN, by and through its duly authorized agent Defendant HCI, and this reliance estops Defendant HRN from denying the existence of said special agency relationship.

### X.

That Defendants, and each of them, knew or should have known that the sale by Defendant HCI to Defendant HRN of all, or substantially all, of its assets would render Defendant HCI unable to pay to Plaintiff the purchase price for sale of the property known as the "FOLIES BERGERE SHOW".

### XI.

On the 3rd day of March, 1980, in the Eighth Judicial District Court of the State of Nevada in and for the County of Clark, Plaintiff recovered judgment against De-

fendant HCI for TWO MILLION DOL-LARS ($2,000,000.00).

## XII.

Pursuant to said judgment Defendants HCI and DOES I through X, and each of them, signed a confession thereof, but no part of said judgment has been paid to date.

## XIII.

That such signing by Defendant HCI as an agent for Defendant HRN renders Defendants HCI and HRN jointly and severally liable for the amount of said judgment. A true copy of said signed "Confession of Judgment" is attached hereto and made a part hereof and marked Plaintiff's Exhibit "I".

## XIV.

That Defendant HRN's acceptance of the benefits flowing from the transaction between Plaintiff and Defendant HCI renders them liable to Plaintiff for the sum of TWO MILLION DOLLARS ($2,000,000.00) as the agreed upon purchase price.

## SEVENTH CLAIM FOR RELIEF

### (Promissory Note)

#### I.

Plaintiff, PRODUCTIONS & LEASING, LTD., incorporates herein by reference Paragraphs I through XIX of its First Claim for Relief, Paragraphs I through VII of its Second Claim for Relief, Paragraphs I through VII of its Third Claim for Relief, Paragraphs I through V of its Fourth Claim for Relief, Paragraphs I through V of its Fifth Claim for Relief and Paragraphs I through XIV of its Sixth Claim for Relief, as though fully set forth herein at length.

#### II.

On or about January 1, 1980, Defendant HRN, by and through Defendants HCI and DOES I through X, and each of them, as duly authorized agents, executed and delivered to Plaintiff a Promissory Note, a true copy of which is attached hereto and incorporated herein as though set forth fully word for word and marked Plaintiff's Exhibit "J", whereby Defendants HCI and DOES I through X, and each of them, on behalf of Defendant HRN, agreed to pay Plaintiff the balance of $1,855,000.00 in periodic payments in consideration for value received.

#### III.

The terms of said periodic payments were as follows:

(a) On or before December 31, 1981, interest on the unpaid balance from January 2, 1980 to December 31, 1981, at the rate of six percent (6%) per annum, together with a principal payment of ONE MILLION DOLLARS ($1,000,000.00); and

(b) On or before December 31, 1982, interest on the unpaid balance at the rate of six percent (6%) per annum, from January 1, 1982 to December 31, 1982, together with a principal payment of Eight Hundred Fifty Five Thousand Dollars ($855,000.00).

#### IV.

That by virtue of Defendant HCI's default, in tendering a FIFTY THOUSAND DOLLAR ($50,000.00) check which check failed to clear due to insufficient funds, and commencement of this suit, Defendant HCI must pay interest thereon at the rate of FIFTEEN PERCENT (15%) PER ANNUM pursuant to the terms of Exhibit "J", attached hereto and made a part hereof.

#### V.

That at the time said check failed to clear due to insufficient funds, Plaintiff became aware that Defendant HCI would be unable to perform as promised under the terms of the Promissory Note, marked Plaintiff's Exhibit "J", attached hereto and made a part hereof.

## VI.

That Defendants, HRN, RAMADA INNS, INC., and DOES I through X, as guarantors of the account between Plaintiff and Defendant HCI, are liable for payment pursuant to said Promissory Note marked Plaintiff's Exhibit "J", attached hereto and made a part hereof.

## VII.

That Defendant HCI's inability to perform is an implied repudiation not yet retracted by either Defendant HCI, as a duly authorized agent of HRN, or Defendant HRN, as the principal.

## VIII.

That at the time of the implied repudiation by Defendants HCI, HRN, Plaintiff performed all of the conditions and promises on its part to be performed.

## IX.

That by the terms of said Promissory Note attached hereto and incorporated herein by reference as though set forth fully word for word, in the event of default of, or commencement of suit for collection of any amount due thereunder, reasonable attorney's fees incurred in suit or collection would be paid by Defendant HCI as agents of Defendant HRN in addition to taxable costs.

## EIGHTH CLAIM FOR RELIEF

### (Deprivation of Civil Rights)

## I.

Plaintiff, PRODUCTIONS & LEASING, LTD., incorporates herein by reference Paragraphs I through XIX of its First Claim for Relief, Paragraphs I through VII of its Second Claim for Relief, Paragraphs I through VII of its Third Claim for Relief, Paragraphs I through V of its Fourth Claim for Relief, Paragraphs I through V of its Fifth Claim for Relief, Paragraphs I through XIV of its Sixth Claim for Relief, and Paragraphs I through IX of its Seventh Claim for Relief, as though fully set forth herein at length.

## II.

That the jurisdiction of this Court is invoked pursuant to the provisions of Title 28, United States Code § 1343(3), this being an action at law and in equity which is authorized by law, Title 42, United States Code, § 1983, to be brought to redress the deprivation under color of state law, statute, ordinance, regulation, custom, or usage of rights secured by the Constitution and laws of the United States. The rights here sought to be redressed are rights guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## III.

That Defendant COMMISSION, its members past and present, Defendant BOARD, its members past and present, and DOES X through XX, are regulated by Chapter 463 of Nevada Revised Statutes.

## IV.

Pursuant to said Chapter 463 of Nevada Revised Statutes, Defendant COMMISSION, its members past and present, Defendant BOARD, its members past and present, and DOES X through XX, are empowered, by the State of Nevada, to issue gaming licenses for the operation and maintenance of gambling casinos.

## V.

That, by virtue of their state created existence, Defendants COMMISSION and BOARD, their past and present members, inclusive, and DOES X through XX, the actions taken by them constitute "state action" within the meaning of 42 U.S.C. § 1983.

## VI.

That prior to December 7, 1979, Plaintiff, PRODUCTIONS & LEASING, LTD., was the owner of all the right, title and interest in that theatrical production known as the "FOLIES BERGERE SHOW", more partic-

ularly described above in Paragraph XI of Plaintiff's First Claim for Relief, and incorporated by reference herein. Said property, because it was a showroom extravaganza presented at the Tropicana Hotel and Country Club, was subject to a casino entertainment tax pursuant to N.R.S. 463.401, which tax is to be paid by the licensee.

### VII.

Plaintiff is informed and believes, and based upon such information and belief alleges, that due to pressure by Defendant COMMISSION, its members past and present, Defendant BOARD, its members past and present, and DOES X through XX, on Defendants HRN and RAMADA INNS, INC., Plaintiff, PRODUCTIONS & LEASING, LTD., was deprived of a constitutionally protected property right in and to property described above as the "FOLIES BERGERE". Said pressure perpetrated by Defendants COMMISSION, its members past and present, and BOARD, its members past and present, consisted of the following:

(1) Threats that if Defendant HRN contracted directly with JOSEPH AGOSTO, as the agent of Plaintiff, PRODUCTIONS & LEASING, LTD., it would adversely affect its being licensed to operate the TROPICANA HOTEL AND COUNTRY CLUB by gaming authorities; and

(2) Due to the above described threats, Defendant HRN agreed to use HCI as an agent rather than deal directly with JOSEPH AGOSTO in order to avoid the possibility that HRN could be denied gaming licenses.

### VIII.

That as a direct and proximate result of Defendant COMMISSION, its members past and present, Defendant BOARD, its members past and present, and DOES X through XX, wrongful deprivation of Plaintiff's property interest in the "FOLIES BERGERE", Plaintiff has suffered damages in the amount of TWO MILLION DOLLARS ($2,000,000.00) and incurred attorney's fees in connection with bringing this action.

### IX.

That Plaintiff is entitled to recover punitive damages in excess of $10,000.00 against Defendant COMMISSION, its members past and present, and Defendant BOARD, its members past and present, in that said Defendants, above described deprivation of constitutionally protected property was willful, without any reasonable cause, and in complete disregard of Plaintiff's rights under the Fourteenth Amendment to the United States Constitution.

### NINTH CLAIM FOR RELIEF

(Conspiracy to Deprive of Civil Rights)

### I.

Plaintiff, PRODUCTIONS & LEASING, LTD., incorporates herein by reference Paragraphs I through XIX of its First Claim for Relief, Paragraphs I through VII of its Second Claim for Relief, Paragraphs I through VII of its Third Claim for Relief, Paragraphs I through V of its Fourth Claim for Relief, Paragraphs I through V of its Fifth Claim for Relief, Paragraphs I through XIV of its Sixth Claim for Relief, Paragraphs I through IX of its Seventh Claim for Relief, and Paragraphs I through IX of its Eighth Claim for Relief, as though fully set forth herein at length.

### II.

That the jurisdiction of this Court is invoked pursuant to the provisions of Title 28, United States Code § 1343(3), this being an action at law and in equity which is authorized by law, Title 42, United States Code § 1985(3), to be brought to redress a conspiracy by and between Defendants HCI, HRN, RAMADA INNS, INC., DEIL O. GUSTAFSON, HOWARD JOHNSON, M. WILLIAM ISBELL, COMMISSION, its members past and present and BOARD, its members past and present to interfere with Plaintiff's rights, more particularly described above in Plaintiff's Eighth Claim for Relief incorporated herein by reference.

The rights here sought to be redressed are rights guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

### III.

That prior to December 7, 1979, Plaintiff, PRODUCTIONS & LEASING, LTD., was the owner of all right, title and interest in that theatrical production known as the "FOLIES BERGERE SHOW", more particularly described above in Paragraph XI of Plaintiff's First Claim for Relief and incorporated herein by reference.

### IV.

That Defendants, HCI, HRN, RAMADA INNS, INC., DEIL O. GUSTAFSON, HOWARD JOHNSON, M. WILLIAM IS-BELL, COMMISSION, its members past and present, BOARD, its members past and present, and DOES I through XX, unlawfully conspired with each other with the intent to wrongfully deprive Plaintiff, PRODUCTIONS & LEASING, LTD., of property without due process of law in that they sought to acquire Plaintiff's right, title, and interest to the "FOLIES BERGERE SHOW" without paying sufficient consideration thereto.

### V.

That Plaintiff is informed and believes, and based upon such information and belief alleges, that Defendants, and each of them, committed the following described acts in furtherance of said conspiracy:

(1) Defendants COMMISSION, its members past and present, BOARD, its members past and present, and DOES X through XX, represented to Defendant HRN that if it negotiated directly with JOSEPH AGOSTO as agent for Plaintiff, PRODUCTIONS & LEASING, LTD., for the purchase of that property known as the "FOLIES BERGERE", more particularly described above, Defendant HRN's chances of obtaining the requisite gaming licenses would be adversely affected;

(2) Due to the above described representations by Defendants COMMISSION, its members past and present, and DOES X through XX, Defendants HRN, RAMA-DA INNS, INC., HOWARD JOHNSON, M. WILLIAM ISBELL, and DOES I through X, entered into an agreement with Defendants HCI and DEIL O. GUS-TAFSON whereby Defendant HCI would act as an agent for Defendants HRN, RAMADA INNS, INC., HOWARD JOHNSON, M. WILLIAM ISBELL, and DOES I through X, to negotiate directly with JOSEPH AGOSTO as agent for Plaintiff, PRODUCTIONS & LEASING, LTD. for the purchase of that property known as the "FOLIES BERGERE", more particularly described above;

(3) Such actions as those above described were undertaken to prevent Defendants HRN, RAMADA INNS, INC., HOWARD JOHNSON, M. WILLIAM ISBELL, and DOES I through X, from dealing directly with JOSEPH AGOSTO in order to avoid the possibility that HRN could be denied gaming licenses;

(4) Defendants HCI and DEIL O. GUS-TAFSON, with full knowledge of the conspiracy performed the above-described actions with the intent to wilfully and maliciously deprive Plaintiff, PRODUC-TIONS & LEASING, LTD., of its rights in that property known as the "FOLIES BERGERE", more particularly described above, thereby acting in concert with Defendants COMMISSION, its members past and present, BOARD, its members past and present, HRN, RAMADA INNS, INC., HOWARD JOHNSON, M. WILLIAM ISBELL, and DOES I through XX.

### VI.

As a further direct and proximate result of the above-described conspiracy, Plaintiff, PRODUCTIONS & LEASING, LTD., has been wilfully and maliciously deprived of a constitutionally protected property interest in and to that property known as the "FO-LIES BERGERE", more particularly described above, without due process of law in contravention of the constitution of the United States in that payment in the

agreed upon TWO MILLION DOLLARS ($2,000,000.00) amount, nor any part thereof, has ever been made.

### VII.

That as a further result of said wilful and malicious deprivation by Defendants, and each of them, Plaintiff, PRODUCTIONS & LEASING, LTD., is entitled to punitive damages in excess of $10,000.00.

### TENTH CLAIM FOR RELIEF

(Alleging Racketeer Influenced and Corrupt Organization)

### I.

Plaintiff, PRODUCTIONS & LEASING, LTD., incorporates herein by reference Paragraphs I through XIX of its First Claim for Relief, Paragraphs I through VII of its Second Claim for Relief, Paragraphs I through VII of its Third Claim for Relief, Paragraphs I through V of its Fourth Claim for Relief, Paragraphs I through V of its Fifth Claim for Relief, Paragraphs I through XIV of its Sixth Claim for Relief, Paragraphs I through IX of its Seventh Claim for Relief, Paragraphs I through IX of its Eighth Claim for Relief, and Paragraphs I through VII of its Ninth Claim for Relief as though fully set forth herein at length.

### II.

Plaintiff is informed and believes, and based upon such information and belief alleges, that at all times relevant herein, Defendant, RAMADA INNS, INC., a Delaware corporation, and all its subsidiaries including, but not limited to, Defendant HRN, a Nevada corporation, constituted an "enterprise" as defined in 18 U.S.C. § 1961(4). Plaintiff is further informed and believes that said enterprise was engaged in interstate commerce and the activities of said enterprise affected interstate commerce.

### III.

Plaintiff is informed and believes, and based upon such information and belief alleges, that from on or about April, 1979, up to and including the present, Defendants, HRN, HCI, RAMADA INNS, INC., HOWARD JOHNSON, M. WILLIAM ISBELL, COMMISSION, its members past and present, BOARD, its members past and present, and DOES I through XX, unlawfully conspired to violate 18 U.S.C. § 1962(c), and said Defendants, and each of them, did participate, directly or indirectly, in the conduct of said enterprise's affairs through a pattern of racketeering activity.

### IV.

Plaintiff is informed and believes, and based upon such information and belief alleges, that the object of said conspiracy was to acquire all of Plaintiff's right, title, and interest in that certain theatrical production known as the "FOLIES BERGERE", more particularly described above in Paragraph XI of Plaintiff's First Claim for Relief, through a pattern of racketeering activity, as defined in 18 U.S.C. § 1961(1)(B). Said pattern of racketeering activities included numerous instances, during the pendency of the conspiracy, by the above enumerated Defendants, and each of them, of use of the United States Mail and instrumentalities of interstate commerce in furtherance of a scheme to defraud, and to obtain property by means of false or fraudulent pretenses, representations, or promises, as further set forth in Plaintiff's Second, Fourth and Ninth Claim for Relief, incorporated by reference herein, all in violation of 18 U.S.C. § 1341 and § 1343.

### V.

That by reason of Defendants, HRN, HCI, RAMADA INNS, INC., HOWARD JOHNSON, M. WILLIAM ISBELL, COMMISSION, its members past and present, BOARD, its members past and present and DOES I through XX, violating 18 U.S.C. § 1962, Plaintiff is entitled, pursuant to 18 U.S.C. § 1964(c), to threefold the damages actually sustained or SIX MILLION DOLLARS, ($6,000,000.00), with interest thereof at six percent (6%) per annum, and a rea-

sonable attorney's fee in connection herewith.

WHEREFORE, Plaintiff prays for judgment against Defendants, HCI, HRN, RAMADA INNS, INC., DEIL O. GUSTAFSON, HOWARD JOHNSON, M. WILLIAM ISBELL, and DOES I through X, and each of them, on its First Claim for Relief as follows:

1. For the sum of TWO MILLION DOLLARS ($2,000,000.00), together with interest at the rate of six percent (6%) per annum;

2. For reasonable attorney's fees;

3. For the costs of suit herein incurred;

4. For such other and further relief as the Court deems proper and just in the premises.

WHEREFORE, Plaintiff prays for judgment against Defendants, HCI, HRN, RAMADA INNS, INC., DEIL O. GUSTAFSON, HOWARD JOHNSON, M. WILLIAM ISBELL, and DOES I through X, and each of them, on its Second Claim for Relief as follows:

1. For the sum of TWO MILLION DOLLARS ($2,000,000.00) in compensatory damages;

2. For punitive damages in excess of TEN THOUSAND DOLLARS ($10,000.00);

3. For costs of suit herein incurred; and

4. For such other and further relief as the Court deems proper and just in the premises.

WHEREFORE, Plaintiff prays for judgment against Defendants, HCI, HRN, RAMADA INNS, INC., DEIL O. GUSTAFSON, HOWARD JOHNSON, M. WILLIAM ISBELL, and DOES I through X, and each of them, on its Third Claim for Relief as follows:

1. For the sum of TWO MILLION DOLLARS ($2,000,000.00) in compensatory damages against Defendants HCI and HRN;

2. For an order setting aside the conveyance of all, or substantially all, of HCI's assets and business to HRN;

3. For the costs of suit herein incurred; and

4. For such other and further relief as the Court may deem proper and just in the premises.

WHEREFORE, Plaintiff prays for judgment against Defendants HCI, HRN, RAMADA INNS, INC., DEIL O. GUSTAFSON, HOWARD JOHNSON, M. WILLIAM ISBELL, and DOES I through X, and each of them, on its Fourth Claim For Relief as follows:

1. The sum of TWO MILLION DOLLARS ($2,000,000.00) in compensatory damages;

2. For punitive damages in excess of TEN THOUSAND DOLLARS ($10,000.00);

3. For the costs of suit incurred herein; and

4. For such other and further relief as the Court may deem proper and just in the premises.

WHEREFORE, Plaintiff prays for judgment against Defendants HCI, HRN, RAMADA INNS, INC., DEIL O. GUSTAFSON, HOWARD JOHNSON, M. WILLIAM ISBELL, and DOES I through X, and each of them, on its Fifth Claim For Relief as follows:

1. For the sum of TWO MILLION DOLLARS ($2,000,000.00) with interest at the rate of six percent (6%) per annum in compensatory damages against Defendant RAMADA INNS, INC.;

2. For reasonable attorney's fees;

3. For costs of suit herein incurred; and

4. For such other and further relief as the Court deems proper and just in the premises.

WHEREFORE, Plaintiff prays for judgment against Defendants HCI, HRN, RAMADA INNS, INC., DEIL O. GUSTAFSON, HOWARD JOHNSON, M. WILLIAM ISBELL, and DOES I through X, and each of them, on its Sixth Claim For Relief as follows:

1. For the sum of TWO MILLION DOLLARS ($2,000,000.00) in compensatory damages;

2. For reasonable attorney's fees;

3. For costs of suit herein incurred; and

4. For such other and further relief as to the Court deems proper and just in the premises.

WHEREFORE, Plaintiff prays for judgment against Defendants HCI, HRN, RAMADA INNS, INC., DEIL O. GUSTAFSON, HOWARD JOHNSON, M. WILLIAM ISBELL, and DOES I through X, and each of them, on its Seventh Claim For Relief as follows:

1. For the sum of ONE MILLION EIGHT HUNDRED FIFTY–FIVE THOUSAND DOLLARS ($1,855,000.00) together with interest at the rate of fifteen percent (15%) per annum;

2. For reasonable attorney's fees incurred;

3. For costs of suit herein incurred;

4. For such other and further relief as to this Court may deem proper and just in the premises.

WHEREFORE, Plaintiff prays for judgment against Defendants HCI, HRN, RAMADA INNS, INC., DEIL O. GUSTAFSON, HOWARD JOHNSON, M. WILLIAM ISBELL, DOES I through X, COMMISSION, its members past and present, BOARD, its members past and present, and DOES X through XX, and each of them, on its Eighth Claim For Relief as follows:

1. For the sum of $2,000,000.00 in compensatory damages;

2. For reasonable attorney's fees;

3. For punitive damages in excess of $10,000.00;

4. For costs of suit herein incurred;

5. For adjudication and declaration of the rights and other legal relations of the parties to the subject matter here in controversy, in order that such declaration shall have the force and effect of a final judgment; and

6. For such other and further relief as to this Court may deem proper and just in the premises.

WHEREFORE, Plaintiff prays for judgment against Defendants HCI, HRN, RAMADA INNS, INC., DEIL O. GUSTAFSON, HOWARD JOHNSON, M. WILLIAM ISBELL, DOES I through X, COMMISSION, its members past and present, BOARD, its members past and present, and DOES X through XX, and each of them, on its Ninth Claim For Relief as follows:

1. For the sum of TWO MILLION DOLLARS ($2,000,000.00) in compensatory damages;

2. For punitive damages in excess of $10,000.00;

3. For costs of suit herein incurred; and

4. For such other and further relief as to this Court may deem proper and just in the premises.

WHEREFORE, Plaintiff prays for judgment against Defendants HCI, HRN, RAMADA INNS, INC., HOWARD JOHNSON, M. WILLIAM ISBELL, DOES I through X, COMMISSION, its members past and present, BOARD, its members past and present, and DOES X through XX, and each of them, on its Tenth Claim For Relief as follows:

1. For threefold the damages actually sustained and the costs of suit, in a sum not less than SIX MILLION DOLLARS ($6,000,000.00), including a reasonable attorney's fee, pursuant to 18 U.S.C. § 1964(c) with interest thereon at the rate of six percent (6%) per annum;

2. For such other and further relief as the Court may deem appropriate pursuant to 18 U.S.C. § 1964; and

3. For such other and further relief as the Court may deem proper and just in the premises.

DATED this 25 day of February, 1981.

THOMAS F. PITARO, ESQUIRE
Attorney for Plaintiff
3407 W. Charleston Blvd.
Las Vegas, Nevada 89102

STATE OF NEVADA )
) : ss
COUNTY OF CLARK )

JOAN NORRIS WHEELER, being first duly sworn, deposes and says: That she is the Secretary-Treasurer of the Plaintiff corporation herein in the above-entitled action; that she has read the foregoing Complaint and knows the contents thereof, and that the same is true of her own knowledge except for those matters therein stated on information and belief, and as for those matters, she believes them to be true.

*Joan Norris Wheeler*
JOAN NORRIS WHEELER

SUBSCRIBED AND SWORN to before me this 24th day of February, 1981.

*Phyllis J. Lester*
NOTARY PUBLIC in and for said
County and State.

Notary Public-State of Nevada
CLARK COUNTY
Phyllis J. Lester
My Appointment Expires Oct. 12, 1983